UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

CHRISTINA GAVIN,

                                                    No. 20 Civ. 8163 (JPO)
                                    Plaintiff,

              -against-

THE CITY OF NEW YORK, POLICE SERGEANT
MATTHEW TOCCO (TAX ID 940805), AND INSPECTOR
GERARD DOWLING (TAX 915640),


                                    Defendants.

------------------------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT'S MOTION TO PARTIALLY DISMISS
### THE AMENDED COMPLAINT


**GEORGIA M. PESTANA**
ACTING CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007


By:     Brachah Goykadosh
        *Senior Counsel*
        Special Federal Litigation Division
        (212) 356-3523

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS .......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF RELEVANT FACTS .............................................................................. 2

LEGAL STANDARD ............................................................................................................. 3

ARGUMENT ........................................................................................................................... 3

    I.   Plaintiff's Cannot Proceed with Her Claim for Denial of Right to Fair Trial. ................... 3

        A.   Plaintiff's Fair Trial Claim Should Be Dismissed as the Criminal Proceedings against Her Did Not Terminate in Her Favor. ........................................................... 3

        B.  The Court Should Deny Any Motion by Plaintiff to Strike or Stay. ............................ 6

            1.  A Motion to Strike Would Be Inappropriate. .......................................................... 6

            2.  A Motion to Stay Would Be Inappropriate. ............................................................. 7

    II.  Plaintiff Cannot Proceed with Her Claim for Municipal Liability. .................................... 9

        A.  Plaintiff Fails to State a Claim for Municipal Liability. ............................................... 9

            1.  Plaintiff's Citation to Three Cases, Two Depositions, and One Report Does Not Support a Monell Claim. ...................................................................................... 11

               i.   Plaintiff's Citation to Three Cases Does Not Support Her Claim. ................. 11

               ii.  Plaintiff's Citation to a Report and Deposition Testimony Does Not Support Her Claim. ................................................................................................ 15

2. Plaintiff Fails to Plead Any of the Prongs Required for Failure to Train. ............ 16

B. Any Construable Claim for Municipal Liability Should Be Bifurcated. ................... 18

III. The Court Should Not Grant Plaintiff Leave to Amend. ................................................. 22

CONCLUSION ..................................................................................................................... 23

**Page(s)**

**Cases**

*Aguirre v. City of New York*,
No. 15-cv-6043 (PKC), 2017 U.S. Dist. LEXIS 155422 (E.D.N.Y. Sep. 22, 2017) ................................................................................................................... 15

*Amato v. City of Saratoga Springs*,
170 F.3d 311 (2d Cir. 1999) ........................................................................... 14, 18

*An v. City of New York*,
230 F. Supp. 3d 224 (S.D.N.Y. 2017) ............................................................ 10, 11

*Applestein v. Kleinhendler*,
No. 20-cv-1454 (AMD) (VMS), 2021 U.S. Dist. LEXIS 26056 (E.D.N.Y. Feb. 10, 2021) ...................................................................................................... 8

*Aquino v. City of New York.*,
No. 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436 (S.D.N.Y. Jan. 25, 2017) ................................................................................................................... 10

*Aquino v. City of New York*,
No. 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 76402 (S.D.N.Y. May 19, 2017) ................................................................................................................... 19

*Arbuckle v. City of New York*,
No, 14 Civ. 10248 (ER), 2016 U.S. Dist. LEXIS 136857 (S.D.N.Y. Sep. 30, 2016) ................................................................................................................... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................. 3

*Bethune v. Westchester Cty.*,
No. 18 Civ. 3500 (NSR), 2020 U.S. Dist. LEXIS 36013 (S.D.N.Y. Mar. 2, 2020) ................................................................................................................... 11

*Breton v. City of New York*,
404 F. Supp. 3d 799 (S.D.N.Y. 2019) ................................................................ 4

*Brown v. City of New York*,
No. 13 Civ. 6912 (TPG), 2016 U.S. Dist. LEXIS 18670 (S.D.N.Y. Feb. 16, 2016) ................................................................................................................... 19

*Case v. City of New York*,
408 F. Supp. 3d 313 (S.D.N.Y. 2019)..............................................................13, 14

*Cash v. Cty. of Erie*,
654 F.3d 324 (2d Cir. 2011)...................................................................................10

*City of Canton v. Harris*,
489 U.S. 378 (1989)...............................................................................................10

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986)...............................................................................................19

*Clinton v. Jones*,
520 U.S. 681 (1997).................................................................................................8

*Connick v. Thompson*,
563 U.S. 51 (2011).............................................................................................1, 11

*Copeland v. City of New York*,
00-0034, 2000 U.S. App. LEXIS 29696 (2d Cir. Nov. 21, 2000) .............................5

*Corso v. Calle-Palomeque*,
No. 17 Civ. 6096 (NRB), 2020 U.S. Dist. LEXIS 91882 (S.D.N.Y. May 26,
2020) ....................................................................................................................4, 5

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)......................................................................................22

*Daniels v. Taylor*,
443 F. Supp. 3d 471 (S.D.N.Y. 2020)........................................................................5

*Davis v. City of New York*,
228 F. Supp. 2d 327 (S.D.N.Y. 2002)......................................................................14

*Delorbe-Bell v. City of New York*,
No. 15 Civ. 2344 (LGS), 2016 U.S. Dist. LEXIS 49363 (S.D.N.Y. Apr. 12,
2016) ......................................................................................................................15

*Dinler v. City of New York*,
2012 U.S. Dist. LEXIS 141851 (S.D.N.Y. Sep. 30, 2012)......................................14

*Dinler v. City of New York*,
No. 04 Civ. 7921 (RJS) (JCF) ..................................................................14, 17, 20

*Dwares v. City of New York*,
985 F.2d 94 (2d Cir. 1993), *overruled on other grounds by Leatherman v.
Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)......................9

*Ellis v. Chao*,
 336 F.3d 114 (2d Cir. 2003)................................................................22

*Escobar v. City of New York*,
 766 F. Supp. 2d 415 (E.D.N.Y. 2011) ...............................................14

*Fowler v. City of New York*,
 No. 13-cv-2372(KAM)(ST), 2019 U.S. Dist. LEXIS 51108 (E.D.N.Y. Mar.
 26, 2019) ............................................................................................14

*Fulton v. Robinson*,
 289 F.3d 188 (2d Cir. 2002)..................................................................5

*Ganek v. Leibowitz*,
 874 F.3d 73 (2d Cir. 2017)....................................................................4

*Garnett v. Undercover Officer C0039*,
 838 F.3d 265 (2d Cir. 2016)..................................................................4

*Glascoe v. Solomon*,
 No. 18 Civ. 8284 (AT), 2020 U.S. Dist. LEXIS 46930 (S.D.N.Y. Mar. 17,
 2020) ....................................................................................................7

*Goldring v. Donawa*,
 No. 16-cv-5651 (KAM) (LB), 2019 U.S. Dist. LEXIS 161170 (E.D.N.Y. Sept.
 19, 2019) ..............................................................................................5

*Gondola v. City of New York*,
 No. 16-cv-369 (AMD) (SJB), 2020 U.S. Dist. LEXIS 50972 (E.D.N.Y. Mar.
 24, 2020) ..............................................................................................5

*Hosking v. New World Mortg., Inc.*,
 602 F. Supp. 2d 441 (E.D.N.Y. 2009) ...............................................22

*Huelbig v. Aurora Loan Servs., LLC*,
 No. 10 Civ. 6215 (RJH) (THK), 2011 U.S. Dist. LEXIS 107428 (S.D.N.Y.
 May 18, 2011) .......................................................................................7

*Isaac v. City of New York.*,
 No. 16-cv-4729 (KAM), 2018 U.S. Dist. LEXIS 132995 (E.D.N.Y. Aug. 6,
 2018) ..................................................................................................15

*Jenkins v. City of New York*,
 478 F.3d 76 (2d Cir. 2007)...........................................................10, 16

*Jenkins v. City of New York*,
 No. 15-cv-5889 (RJD), 2019 U.S. Dist. LEXIS 131691 (E.D.N.Y. Aug. 6,
 2019) ..................................................................................................21

*Jones v. New York Div. of Military & Naval Affairs*,
    166 F.3d 45 (2d Cir. 1999)...................................................................................22

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)..........................................................................................8

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012)..............................................................................7, 8

*Maldonado-Padilla v. Holder*,
    651 F.3d 325 (2d Cir. 2011)...............................................................................8

*Maradiaga v. City of New York*,
    No. 16 Civ. 8325 (GBD), 2020 U.S. Dist. LEXIS 182288 (S.D.N.Y. Oct. 1,
    2020) ..................................................................................................................5

*McDonough v. Smith*,
    139 S. Ct. 2149 (2019)..............................................................................1, 4, 5

*McKenzie v. City of New York*,
    No. 17 Civ. 4899 (PAE), 2019 U.S. Dist. LEXIS 121937 (S.D.N.Y. July 22,
    2019) ..................................................................................................................4

*McLaughlin v. Chong*,
    No. 13 Civ. 0807 (NSR), 2016 U.S. Dist. LEXIS 42614 (S.D.N.Y. Mar. 29,
    2016) ..................................................................................................................7

*Mei Ling Lin v. City of New York*,
    No. 14 Civ. 9994 (PAE), 2015 U.S. Dist. LEXIS 199152 (S.D.N.Y. Nov. 17,
    2015) ................................................................................................................20

*Miller v. Terrillion*,
    436 F. Supp. 3d 598 (E.D.N.Y. 2020) .............................................................4, 6

*Mineo v. City of New York*,
    No. 09-cv-2261, 2013 U.S. Dist. LEXIS 46953 (E.D.N.Y. Mar. 29, 2013)...........................19

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978)........................................................................... *passim*

*Montero v. City of Yonkers*,
    890 F.3d 386 (2d Cir. 2018)...............................................................................9

*Morales v. Irizarry*,
    No. 95 Civ. 5068 (AGS) (HBP), 1996 U.S. Dist. LEXIS 15613 (S.D.N.Y. Oct.
    17, 1996) ..........................................................................................................19

*Murphy v. Lynn*,
　118 F.3d 938 (2d Cir. 1997) ........................................................................5

*Nelson v. Wells Fargo Bank, N.A.*,
　No. 17 Civ. 4045 (LAP), 2019 U.S. Dist. LEXIS 101779 (S.D.N.Y. June 18,
　2019) ............................................................................................................7

*Nigro v. City of New York*,
　No. 19 Civ. 2369 (JMF), 2020 U.S. Dist. LEXIS 240758 (S.D.N.Y. Dec. 22,
　2020) ........................................................................................................5, 6

*Okin v. Vill. of Cornwall-On-Hudson Police Dep't*,
　577 F.3d 415 (2d Cir. 2009) ......................................................................10

*Peat v. City of New York*,
　No. 12 Civ. 8230 (SAS). (Am. Compl..) ...........................................11, 12, 13

*Pembaur v. City of Cincinnati*,
　475 U.S. 469 (1986) .....................................................................................9

*Pluma v. City of New York*,
　No. 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134 (S.D.N.Y. Mar. 31,
　2015) ..........................................................................................................18

*Reynolds v. Giuliani*,
　506 F.3d 183 (2d Cir. 2007) ......................................................................10

*Ricciuti v. New York City Transit Auth.*,
　796 F. Supp. 84 (2d Cir. 1999) ......................................................18, 20, 21

*Rothstein v. Carriere*,
　373 F.3d 275 (2d Cir. 2004) ........................................................................5

*Segal v. City of New York*,
　459 F.3d 207 (2d Cir. 2006) ......................................................................19

*Shain v. Ellison*,
　273 F.3d 56 (2d Cir. 2001) ..........................................................................5

*Sierra v. United States*,
　No. 97 Civ. 9329 (RWS), 1998 U.S. Dist. LEXIS 14135 (S.D.N.Y. Sep. 9,
　1998) ............................................................................................................7

*Simms v. City of New York*,
　No. 10-cv-3420 (NGG) (RML), 2011 U.S. Dist. LEXIS 115949 (E.D.N.Y.
　Sep. 27, 2011) ............................................................................................13

*Sims v. City of New York*,
No. 15 Civ. 2485 (AT), 2017 U.S. Dist. LEXIS 139107 (S.D.N.Y. Aug. 28, 2017) ...................................................................................................................13, 16

*Singleton v. New York*,
632 F.2d 185 (2d Cir. 1980)................................................................................5

*Soto v. City of New York, et al.*,
No. 13 Civ. 8474 (LTS), 2017 U.S. Dist. LEXIS 31296 (S.D.N.Y. Mar. 6, 2017) ...............................................................................................................17

*Strauss v. City of Chi.*,
760 F.2d 765 (7th Cir. 1985) .............................................................................11

*Tabor v. City of New York, et al.*,
No. 11-cv-0195 (FB), 2012 U.S. Dist. LEXIS 29004 (E.D.N.Y. Feb. 23, 2012)...................19

*Thomas v. Ortiz*,
No. 14-cv-7513 (ENV) (VMS), 2020 U.S. Dist. LEXIS 96812 (E.D.N.Y. May 1, 2020) .........................................................................................................4

*Topps Co., Inc. v. Koko's Confectionery & Novelty*,
No. 16 Civ. 5954 (GBD), 2020 U.S. Dist. LEXIS 155951 (S.D.N.Y. Aug. 27, 2020) ...............................................................................................................7

*Vann v. City of New York*,
72 F.3d 1040 (2d Cir. 1995)...............................................................................10

*Vincent v. Winski*,
No. 14 Civ. 7744 (VSB), 2018 U.S. Dist. LEXIS 47537 (S.D.N.Y. Mar. 22, 2018) .............................................................................................................11

*Walker v. City of New York*,
No. 14 Civ. 808 (ER), 2015 U.S. Dist. LEXIS 91410 (S.D.N.Y. July 14, 2015). *Case* ........................................................................................................13

*Williams v. City of New York*,
No. 07-cv-5362 (NG) (VVP), 2008 U.S. Dist. LEXIS 104730 (E.D.N.Y. Dec. 29, 2008) .........................................................................................................19

*Williams v. City of New York*,
No. 14 Civ. 5123 (NRB), 2015 U.S. Dist. LEXIS 94895 (S.D.N.Y. July 21, 2015) .............................................................................................................17

*Wray v. City of New York*,
490 F.3d 189 (2d Cir. 2007)................................................................................9

## PRELIMINARY STATEMENT

Plaintiff was arrested at a protest in the autumn of 2019. She accepted an adjournment in contemplation of dismissal. Plaintiff then sued the City of New York, Inspector Gerard Dowling, and Sergeant Matthew Tocco pursuant to 42 U.S.C. § 1983. Instead of answering the Complaint, defendants moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for two reasons. ECF No. 17. First, because plaintiff accepted an adjournment in contemplation of dismissal, she cannot successfully plead the favorable termination requirement that *McDonough v. Smith*, 139 S. Ct. 2149 (2019) imposes on a fair trial claim. Second, any claim for municipal liability against the City of New York pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) was threadbare.

In response to defendants' motion to dismiss, plaintiff filed an Amended Complaint. *See* ECF Nos. 17, 22. But the Amended Complaint and the original Complaint are nearly identical. Paragraphs 1 through 35 of both pleadings are verbatim. Plaintiff does nothing to amend her fair trial claim. Despite adding fourteen new paragraphs to the Amended Complaint, her *Monell* claim still fails to satisfy the pleading requirements. Now, plaintiff purports to sue the City of New York on a failure to train theory, ignoring that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

In sum, plaintiff fails to cure the deficiencies identified in defendants' original motion. Therefore, for the reasons articulated *infra*, defendants' motion to dismiss pursuant to Rule 12(b)(6) should be granted and the Amended Complaint should be partially dismissed.[1]

---

[1] Plaintiff also claims false arrest, excessive force, and state law claims. In this motion, defendants do not move for dismissal of those three claims. This is not to say that these claims have any merit; only that a motion for summary judgment will dispose of these claims at the appropriate time.

<u>**STATEMENT OF RELEVANT FACTS**</u>[2]

According to the allegations set forth in plaintiff's Amended Complaint, on November 22, 2019 at approximately 6:00 p.m., she participated in a protest in New York City.  (*See* First Amended Complaint (hereinafter "Am. Compl.") annexed to the Declaration of Brachah Goykadosh as Exhibit "A," ¶10.)[3]  At the protest, the police played a "pre-made recording" stating that the protest was illegal and instructing the protestors to leave the streets and get on to the sidewalk.  (Am. Compl. ¶12.)  Plaintiff immediately attempted to obey this instruction and leave the street.  (Am. Compl. ¶13.)  But she could not get to the sidewalk because she was situated between two large buses blocking direct access to the sidewalk.  (Am. Compl. ¶¶ 14, 15.)  Plaintiff tried to obey the instructions and she walked past the bus, the crowd, a police van, towards what appeared to be an open path.  (Am. Compl. ¶16.)

After doing so, she was confronted by Sergeant Tocco who demanded, "Where do you think you're going?"  (Am. Compl. ¶17.)  He grabbed plaintiff's left arm.  (Am. Compl. ¶17.)  She said, "I'm trying to get on the sidewalk" and Sergeant Tocco responded "shut the fuck up!"  (Am. Compl. ¶18.)  At that point, Inspector Dowling grabbed plaintiff's right arm and they kicked plaintiff's feet out from under her, driving her to the ground, and causing her body to hit the street, which caused abrasions to her legs. (Am. Compl. ¶¶18-19.)  Plaintiff was then handcuffed and arrested.  (Am. Compl. ¶¶20, 24.)  In the criminal court complaint, plaintiff's arresting officer averred that "plaintiff jumped on top of Inspector Dowling's back while defendants Tocco and Dowling were making a lawful arrest of another individual for blocking

---

[2] The facts cited are taken from plaintiff's Amended Complaint; defendants do not concede the truth of the facts alleged therein but accept plaintiff's allegations as true for the purposes of this motion only.  This section of the motion is substantially similar to that in defendants' original moving papers.  The reason for this is that plaintiff has not made any changes to the underlying facts she claims form the basis for any alleged unconstitutional conduct.

[3] The First Amended Complaint is also filed on the Civil Docket Sheet at ECF No. 22.

vehicle traffic and refusing to go onto the sidewalk." (Am. Compl. ¶29). At her arraignment, plaintiff "acceded to an adjournment in contemplation of dismissal and her charges were eventually dismissed." (Am. Compl. ¶32.)

## LEGAL STANDARD

"To survive a motion to dismiss [pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though the Court must accept as true all well-pleaded facts, this does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *Twombly*, 550 U.S. at 570.

## ARGUMENT

I. **Plaintiff's Cannot Proceed with Her Claim for Denial of Right to Fair Trial.**[4]

   A. *Plaintiff's Fair Trial Claim Should Be Dismissed as the Criminal Proceedings against Her Did Not Terminate in Her Favor.*[5]

Plaintiff accepted an adjournment in contemplation of dismissal, otherwise known as an "ACD." To pursue her fair trial claim, plaintiff must show that the criminal proceedings terminated in her favor. It is well established that an ACD is not a favorable termination. As such, the criminal proceedings against her did not terminate in her favor. Therefore, plaintiff's fair trial claims fails as a matter of law and should be dismissed.

---

[4] To the extent this claim survives defendants' motion to dismiss, defendants respectfully reserve the right to raise any additional arguments about the viability of this claim in the future.

[5] This section of the motion is substantially similar to that in defendants' original moving papers. This is because plaintiff failed to address this claim when amending the Complaint.

The law is clear. To prevail on a fabrication of evidence claim, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) of a material nature that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)); *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017).

A plaintiff cannot pursue her "fabricated-evidence claim under § 1983 prior to favorable termination of [her] prosecution[,]" at which time the claim accrues. *McDonough v. Smith*, 139 S. Ct. 2149, 2156, 204 L. Ed. 2d 506 (2019); *see also Miller v. Terrillion*, 436 F. Supp. 3d 598, 603-04 (E.D.N.Y. 2020) (holding that "a fair trial has not accrued *unless and until* [a plaintiff's] criminal proceedings terminated in [her] favor." (emphasis added)). "[P]ost-*McDonough*, favorable termination is a required element of fabricated evidence claims . . . . and that in light of the Supreme Court's reasoning in *McDonough*, an ACD is not a 'favorable termination' for purposes of proving a § 1983 fair trial claim." *Corso v. Calle-Palomeque*, No. 17 Civ. 6096 (NRB), 2020 U.S. Dist. LEXIS 91882, at *15 (S.D.N.Y. May 26, 2020) (citing *McDonough*, 139 S. Ct. at 2156); *see also McKenzie v. City of New York*, No. 17 Civ. 4899 (PAE), 2019 U.S. Dist. LEXIS 121937, at *46 (S.D.N.Y. July 22, 2019) (quoting *McDonough*, 139 S. Ct. at 2156)); *accord Breton v. City of New York*, 404 F. Supp. 3d 799, 815 n.2 (S.D.N.Y. 2019) ("The Supreme Court recently held that a claim for the denial of a fair trial based on fabricated evidence does not accrue until the criminal proceedings terminate in favor of the plaintiff."); *Thomas v. Ortiz*, No. 14-cv-7513 (ENV) (VMS), 2020 U.S. Dist. LEXIS 96812, at *16, n.5 (E.D.N.Y. May 1, 2020) (The issue "is whether *McDonough* compels a plaintiff pleading a fair trial claim to show that the prosecution ended in his favor on the question of guilt or innocence. *McDonough* does compel such pleading, and plaintiffs here fail to do so."). When a plaintiff

"has not received a favorable termination under Second Circuit case law . . . . [she] cannot maintain a § 1983 action for an unfair trial." *Goldring v. Donawa*, No. 16-cv-5651 (KAM) (LB), 2019 U.S. Dist. LEXIS 161170 at *11 (E.D.N.Y. Sept. 19, 2019). "Most courts in this Circuit read *McDonough* to require favorable termination in fair trial claims that allege a deprivation of liberty resulting from the use of fabricated evidence in a criminal proceeding." *Gondola v. City of New York*, No. 16-cv-369 (AMD) (SJB), 2020 U.S. Dist. LEXIS 50972, at *8 (E.D.N.Y. Mar. 24, 2020) (citation omitted). Thus, a favorable termination is required to plead a fair trial claim.

An ACD is not a favorable termination.[6] *Rothstein v. Carriere*, 373 F.3d 275, 287 (2d Cir. 2004); *Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002); *Shain v. Ellison*, 273 F.3d 56, 68 (2d Cir. 2001); *Singleton v. New York*, 632 F.2d 185, 193 (2d Cir. 1980). This is well established. *See e.g. Copeland v. City of New York*, 00-0034, 2000 U.S. App. LEXIS 29696, at *2-3 (2d Cir. Nov. 21, 2000) ("This court has consistently held that an ACD does not constitute such a favorable termination[.]") (citing *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997)).

District Courts in this Circuit have routinely held that when a plaintiff accepts an ACD, she cannot pursue fair trial claim because an ACD does not constitute a favorable termination. *See e.g. Nigro v. City of New York*, No. 19 Civ. 2369 (JMF), 2020 U.S. Dist. LEXIS 240758, at *10 (S.D.N.Y. Dec. 22, 2020) (citing cases); *Maradiaga v. City of New York*, No. 16 Civ. 8325 (GBD), 2020 U.S. Dist. LEXIS 182288, at *18 (S.D.N.Y. Oct. 1, 2020) ("The majority of courts to have considered this question . . . . have ruled that an ACD is not a favorable termination for a fair trial claim."); *Corso*, 2020 U.S. Dist. LEXIS 91882, at *15 ("an ACD is not a 'favorable termination' for purposes of proving a § 1983 fair trial claim."); *Daniels v. Taylor*, 443 F. Supp.

---

[6] It "makes sense to adopt the same favorable termination definition for fair trial claims based on fabricated evidence and malicious prosecution claims." *Gondola*, 2020 U.S. Dist. LEXIS 50972, at *12 (citation omitted). "As a practical matter," to hold otherwise, would 'nullify' the favorable termination requirement of a malicious prosecution claim "by encouraging plaintiffs to plead around it by affixing a fair trial label to their claims." *Id.*

3d 471, 478 (S.D.N.Y. 2020) ("[T]his Court is convinced that the courts that have held that an ACD bars a § 1983 plaintiff from bringing a fair trial claim based on fabricated evidence have the better of the arguments."); *Miller*, 436 F. Supp. 3d at 606 ("But where, as here, a criminal defendant has traded resolution of his culpability for peace . . . . he may not bring a fair trial claim, the success of which would necessarily undermine the validity of a prosecution settled only by his acceptance of an ACD.").

Indeed, although courts may have been "divided" on if an ACD barred a fair trial claim, in *Nigro*, the Honorable Jesse M. Furman explained that "the Court has now analyzed the issue and surveyed the case law in the Circuit," and the majority of cases in this Circuit conclude that an ACD bars a fair trial claim. *Nigro*, 2020 U.S. Dist. LEXIS 240758, at *10-11. This Court should follow the same reasoning that the majority of district courts in this Circuit follow.

There is no reason to deviate from the consensus in this Circuit. A favorable termination is required for a fair trial claim. An ACD is not a favorable termination. Plaintiff accepted an ACD. Thus, plaintiff's fair trial claim should be dismissed as a matter of law.

**B.  *The Court Should Deny Any Motion by Plaintiff to Strike or Stay.***

Despite this overwhelming consensus and the scant case law in her favor, plaintiff still pursues this claim. Plaintiff has threatened to move to strike defendants' motion to dismiss or file a motion to stay. She appears to believe that because there are two cases pending before the Second Circuit concerning fair trial claims, defendants' motion should be denied. Both of the remedies plaintiff purports to seek would be inappropriate.

1.  *A Motion to Strike Would Be Inappropriate.*

Rule 12(f) of the Federal Rules of Civil Procedure states that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or

scandalous matter." *See* Fed. R. Civ. P. 12(f). "Rule 12(f) does not authorize this court to strike documents other than pleadings." *Sierra v. United States*, No. 97 Civ. 9329 (RWS), 1998 U.S. Dist. LEXIS 14135, at *28 (S.D.N.Y. Sep. 9, 1998) (citation omitted) (denying plaintiff's motion to strike defendant's motion to dismiss on the basis that a motion to dismiss is not a pleading). "A motion to dismiss . . . . is not a pleading." *Id.* (citing Fed. R. Civ. P. 7(a) (defining pleadings as complaints, answers, replies to counterclaims, third party complaints and third party answers)). Filing a motion to strike is not the proper way to challenge a motion to dismiss. *Id.*

Courts routinely deny motions to strike dispositive motions. *See e.g. Topps Co., Inc. v. Koko's Confectionery & Novelty*, No. 16 Civ. 5954 (GBD), 2020 U.S. Dist. LEXIS 155951, at *1, n.1 (S.D.N.Y. Aug. 27, 2020); *Glascoe v. Solomon*, No. 18 Civ. 8284 (AT), 2020 U.S. Dist. LEXIS 46930, at *28-29 (S.D.N.Y. Mar. 17, 2020); *Nelson v. Wells Fargo Bank, N.A.*, No. 17 Civ. 4045 (LAP), 2019 U.S. Dist. LEXIS 101779, at *15-16 (S.D.N.Y. June 18, 2019); *McLaughlin v. Chong*, No. 13 Civ. 0807 (NSR), 2016 U.S. Dist. LEXIS 42614, at *5-7 (S.D.N.Y. Mar. 29, 2016); *Huelbig v. Aurora Loan Servs., LLC*, No. 10 Civ. 6215 (RJH) (THK), 2011 U.S. Dist. LEXIS 107428, at *5-6 (S.D.N.Y. May 18, 2011) (collecting cases).

This motion to dismiss is not a pleading, as defined by Rule 7(a) of the Federal Rules of Civil Procedure. Nor is this motion in any way abusive or otherwise improper under the circumstances. *See Sierra*, 1998 U.S. Dist. LEXIS 14135, at *27. To the contrary, defendants have relied on robust case law to support their position. Therefore, plaintiff cannot challenge this motion by moving to strike it.

2. *A Motion to Stay Would Be Inappropriate.*

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Louis Vuitton Malletier S.A. v. LY USA,*

*Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Nevertheless, "a stay is an intrusion into the ordinary processes of administration and judicial review," *Maldonado-Padilla v. Holder*, 651 F.3d 325, 328 (2d Cir. 2011), and thus, the party "seeking the stay 'bears the burden of establishing its need.'" Louis Vuitton, 676 F.3d at 97 (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)). *See Applestein v. Kleinhendler*, No. 20-cv-1454 (AMD) (VMS), 2021 U.S. Dist. LEXIS 26056, at *6 (E.D.N.Y. Feb. 10, 2021).

Plaintiff bears the burden of demonstrating why a stay is warranted here. She cannot meet her burden. While there may be two cases pending before the Second Circuit concerning fair trial claims, that does not mean this action must be stayed. If that were the case, nearly every lawsuit would need to be stayed at some point as there are hundreds of cases before the Second Circuit on hundreds of issues. And it is unclear how long any stay would last for, as the two cases that plaintiff has been referring to have not yet even been argued before the Circuit.[7] Thus, the existence of two pending appeals is not a reason for the Court to stay this action or any decision on defendants' motion to dismiss.

Even if the two pending cases were of any moment (they are not), staying this matter would not be the appropriate action. Instead, if the Second Circuit determines that a favorable termination is not required for a fair trial claim, plaintiff can merely re-plead to include this claim at that point.[8] A stay is not a logical or efficient next step in this case, where defendants are eager for a speedily resolution. Because it is plaintiff's burden to show why this action should be stayed, defendants will address any of her arguments on reply.

---

[7] If plaintiff does seek a stay, this would be a *sine die* request as she has no say on when the Circuit may issue any opinion or summary order concerning the two cases pending before it.

[8] The statute of limitations would not expire until November 21, 2022.

**II.    Plaintiff Cannot Proceed with Her Claim for Municipal Liability.**

   **A.  *Plaintiff Fails to State a Claim for Municipal Liability.***

   Plaintiff has attempted to re-fashion her *Monell* claim.  She has added citations to: three lawsuits, testimony from a deposition, and a report.  Though she uses the words "policy" and "practice," she fails to plead the existence of a formal policy or custom.[9] (Am. Compl., ¶¶36-49.)  Instead, giving plaintiff the benefit of the doubt, she appears to be alleging that the City of New York fails to train its police officers to give protestors enough time to comply with dispersal orders before any arrest.  But mere allegations of a few instances of false arrest in other lawsuits do not lend to the inference that the City failed to train its officers to give protestors adequate time to comply with dispersal orders.[10]  She still fails to state a claim.

   To state a claim for municipal liability, a plaintiff must plead:  "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).  To establish the "policy or custom" prong required for municipal liability, a plaintiff must allege: the existence of (1) a formal policy, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978);   (2) actions taken or decisions made by final municipal policymakers that caused a violation of plaintiff's rights, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-484  (1986); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise

---

[9] A "mere assertion" that "a municipality has . . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Montero v. City of Yonkers*, 890 F.3d 386, 403-04 (2d Cir. 2018) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)).

[10] Based on the allegations in the Amended Complaint, it appears that only plaintiff had trouble complying with the dispersal order at the protest and only plaintiff was arrested because of  a failure to comply with a dispersal order.. (Am. Compl., ¶¶15-17.)

municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). *See also Aquino v. City of New York*., No. 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017).

To successfully plead a failure to train *Monell* claim: "First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation[;] "[s]econd, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation[;] [third,] the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotations and citations omitted); *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) .

Whether the "facts demonstrate that the policymaker's inaction was the result of a conscious choice and not mere negligence" is the "operative inquiry." *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (internal quotation marks omitted). "[A] city's failure to train its subordinates satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). *See An v. City of New York*, 230 F. Supp. 3d 224, 230-31 (S.D.N.Y. 2017).

A "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.*

To buttress her claim for failure to train, plaintiff relies only on a handful of citations. She cites to three other cases (Am. Compl., ¶¶ 39.)  She also cites to an independent report by James E. Johnson, the Corporation Counsel of the City of New York, and miscellaneous citations to a deposition.  (Am. Compl., ¶44, 48.)  These few citations do not save her deficient pleading.

    1.  *Plaintiff's Citation to Three Cases, Two Depositions, and One Report Does Not Support Her* Monell *Claim.*

       i.    Plaintiff's Citation to Three Cases Does Not Support Her Claim.

The cases that plaintiff cites to do not salvage her claim.  Three cases are not enough to support a *Monell* claim.  *See An v. City of New York*, 230 F. Supp. 3d 224, 231 (S.D.N.Y. 2017) ("six lawsuits and one newspaper article over the span of four years is insufficient"); *Bethune v. Westchester Cty*., No. 18 Civ. 3500 (NSR), 2020 U.S. Dist. LEXIS 36013, at *11 (S.D.N.Y. Mar. 2, 2020) (the existence of two lawsuits not enough to plausibly allege an inference of deliberate indifference); *see also Strauss v. City of Chi*., 760 F.2d 765, 768-69 (7th Cir. 1985) (The "number of complaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all. That they filed complaints does not indicate that the policies . . . . exist do in fact exist and did contribute to [plaintiff's] injury.")

Plaintiff first cites to *Peat v. City of New York*, No. 12 Civ. 8230 (SAS).  (Am. Compl., ¶39(a).)  *Peat* has no bearing here.  *Peat* was resolved by settlement; there was no finding of liability.  *See Vincent v. Winski*, No. 14 Civ. 7744 (VSB), 2018 U.S. Dist. LEXIS 47537, at *49 (S.D.N.Y. Mar. 22, 2018) (citation omitted) (dismissing a failure to train claim because the mere

fact of a settlement is not probative of liability unless there was a concession of liability); *Arbuckle v. City of New York*, No, 14 Civ. 10248 (ER), 2016 U.S. Dist. LEXIS 136857, at \*51 (S.D.N.Y. Sep. 30, 2016) (same). It does not support an inference of failure to train.

Even assuming *arguendo* that the settlement in *Peat* somehow indicated liability (it does not), the facts in *Peat* differ from those here. In *Peat*, the plaintiffs alleged that the police blocked any means of egress, preventing the protestors from dispersal. *See Peat*, ECF No. 1 at 6, Compl., ¶¶30-35.) Contrastingly, plaintiff her is claiming that she did not have a meaningful opportunity to comply with a dispersal order; she does not allege that the police blocked her. (Am. Compl., ¶¶16, 36.) Thus, *Peat* does not support plaintiff's failure to train theory. Simply, it is not a case about giving protestors a meaningful time to comply with dispersal orders, which is what plaintiff has fashioned her theory of *Monell* as here.

To the extent plaintiff relies on *Peat* solely because it appears to be a protest case with a high settlement, that effort is misguided. Plaintiff incorrectly identifies the settlement posture in *Peat*. There, Rule 68 offers of judgment were served to most of the plaintiffs; and attorneys' fees settled in the amount of $333,000. *See Peat*, ECF No. 46, 47; *see also* Colin Moynihan, *City Settles Occupy Protesters' False-Arrest Lawsuit*, N.Y. TIMES (June 11, 2014 at A21). Looking more closely at *Peat* than the cursory citation plaintiff provides, most of the plaintiffs in this case accepted offers of judgment in the amount of $20,002, while other plaintiffs accepted offers in the amount of $5,002. So while at first glance, the settlement sum in *Peat* may appear to be large, when considering that there were fourteen plaintiffs and considering the amount in attorneys' fees, it does not support plaintiff's theory of failure to train.

Indeed, a citation to a single lawsuit with a large settlement that mostly consists of legal fees does not permit the inference that the City of New York failed to train its police officers to

give protesters a meaningful opportunity to comply with dispersal order.  *Cf. Sims v. City of New York.,* No. 15 Civ. 2485 (AT), 2017 U.S. Dist. LEXIS 139107, at *12 (S.D.N.Y. Aug. 28, 2017) ("Plaintiff alleges [defendant's] failure to train in a purely conclusory manner, and fails to nudge his claim from conceivable to plausible by, for example, identifying a pattern of constitutional violations or a string of pending lawsuits and settlement agreements that may plausibly raise an inference of deliberate indifference.")  Plaintiff has not identified more than a single settlement. There is no string of lawsuits or settlement agreements that may support the inference that plaintiff asks the Court to draw.  In sum, *Peat* does not support plaintiff's failure to train theory.

Second, plaintiff leans on *Case*, 14 Civ. 9148 (AT).   But *Case* is not her saving grace.[11] That another judge in the Southern District "determined that certain allegations made in an unrelated . . . .  action against the City were sufficient to survive" a motion for summary judgment is not "relevant."[12]  *Simms v. City of New York,* No. 10-cv-3420 (NGG) (RML), 2011 U.S. Dist. LEXIS 115949, at *11 (E.D.N.Y. Sep. 27, 2011).   To the extent that the Amended Complaint attempts to use the Court's holding in *Case* as evidence of a policy, custom, or deliberate indifference, that attempt fails.  *Walker v. City of New York,* No. 14 Civ. 808 (ER), 2015 U.S. Dist. LEXIS 91410, at *22 (S.D.N.Y. July 14, 2015).   *Case* also did not constitute a finding of liability against the City; nor has there been a settlement in *Case.*   At most, the plaintiff in *Case* merely overcame the hurdle of summary judgment and the question of liability is being left to a jury.  *Case v. City of New York,* 408 F. Supp. 3d 313, 330 (S.D.N.Y. 2019).   Therefore, while the facts in *Case* might appear similar to those in the Amended Complaint, that

---

[11] Plaintiff appears to believe that *Case* provides a blueprint both her municipal liability claim and how this case should proceed.  She is wrong.

[12] *Simms* dealt with a motion to dismiss while *Case* deals with a motion for summary judgment; nonetheless, the same logic applies here.

does not mean that every plaintiff who may now cite to *Case* can say that they have adequately pleaded municipal liability.[13]

Third, turning to *Dinler v. City of New York*, No. 04 Civ. 7921 (RJS) (JCF), this case is inapposite. Though plaintiff frames the issue in this case as one solely concerning adequate time to comply with dispersal orders, that is not accurate. In *Dinler*, "protesters were not given any additional opportunity [after a dispersal order] to comply and continue the march, were blocked by a line of officers on bicycles, and were ultimately arrested." *Dinler v. City of New York*, 2012 U.S. Dist. LEXIS 141851, at *28 (S.D.N.Y. Sep. 30, 2012). Summary judgment was granted for plaintiffs based on a video that confirmed that the plaintiffs were "attempting to comply with police instructions and that the revocation of consent for the march came suddenly and without any realistic opportunity to disperse or correct the problems with the march." *Dinler*, 2012 U.S. Dist. LEXIS 141851, at *34. That is different from the facts and circumstances here.

But even if the Court is inclined to find that the facts in *Dinler* are close enough to those here, *Dinler*—a single case—is not sufficient to establish a pattern of unconstitutional activity. "[I]solated incidents are not enough to subject a municipality to liability." *Fowler v. City of New York*, No. 13-cv-2372(KAM)(ST), 2019 U.S. Dist. LEXIS 51108, at *25 (E.D.N.Y. Mar. 26, 2019) (citing *Escobar v. City of New York*, 766 F. Supp. 2d 415, 421 (E.D.N.Y. 2011)). Indeed, as discussed *infra*, plaintiff cannot argue that the wrong choice by City employees in these circumstances frequently results in a constitutional violation. Therefore, the citation to one case where liability was found does not automatically establish a viable failure to train claim.

---

[13] *Case* is a single, isolated incident. Isolated incidents are not sufficient for pleading municipal liability. *Davis v. City of New York*, 228 F. Supp. 2d 327, 346 (S.D.N.Y. 2002) ("[T]wo incidents of unconstitutional conduct by low level employees in a city agency with over 35,000 employees can never provide a reasonable basis for finding a widespread or well-settled custom." (emphasis omitted)). Indeed, should *Case* proceed to a trial, the jury may very well determine that the plaintiff did not suffer a violation of his constitutional rights. If that happens, the question of municipal liability will be rendered moot. *See Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999).

ii.     Plaintiff's Citation to a Report and Deposition Testimony Does Not Support Her Claim.

Plaintiff cites to a report by the Corporation Counsel in support of her *Monell* claim.[14] She states, in a conclusory manner, that "according to the Corporation Counsel itself, the NYPD does not demonstrate a consistent commitment to reviewing and responding to external critiques regarding the policing of protests." (Am. Compl., ¶44.) Plaintiff appears to be attempting to reduce a fifty-five page report to a single sentence. But the single sentence does not support an inference of failing to train officers to give protestors a chance to comply with dispersal orders. In fact, the report as a whole does not deal with the adequacy or inadequacy of dispersal orders at protests or training related dispersal orders.[15] Thus, the report is not sufficiently connected to the facts of this case and cannot support an inference of failure to train.

The report does not evidence any failure to train at all. An acknowledgement, at most, that policing at protests can be improved is not evidence of liability or even an inference of liability.[16] *See Delorbe-Bell v. City of New York*, No. 15 Civ. 2344 (LGS), 2016 U.S. Dist. LEXIS 49363, at *7 (S.D.N.Y. Apr. 12, 2016) (findings of a report not sufficient to create a plausible inference of the City's deliberate indifference.); *Isaac v. City of New York.*, No. 16-cv-4729 (KAM), 2018 U.S. Dist. LEXIS 132995, at *51-52 (E.D.N.Y. Aug. 6, 2018) ("Research reports may be used to bolster *Monell* claims, but only if those reports are sufficiently connected to the specific facts of the case and are of relatively recent vintage.) *Aguirre v. City of New York*, No. 15-cv-6043 (PKC), 2017 U.S. Dist. LEXIS 155422, at *15-16 (E.D.N.Y. Sep. 22, 2017)

---

[14] Defendants do not concede that this report would be admissible on any motion for summary judgment or at trial.

[15] Page 49 of the report contains a "Response Planning Checklist" that the Corporation Counsel encouraged NYPD to use. One section of this checklist dealt with dispersal orders.

[16] The report specifically states "[A]lthough the Law Department is counsel to the City, this report does not reach legal conclusions."

("[P]laintiff's reliance on reports and articles regarding misconduct . . . . are inadequate to allege a policy or custom of the City, let alone allege that that policy or custom is the one that gave rise to [p]laintiff's alleged violation.") (citations omitted). The Corporation Counsel's report does not bolster plaintiff's claim for failure to train.

Nor does plaintiff's citation to two depositions bolster her claim. Her citation to *Packard v. City of New York*, No. 15 Civ. 7130 (AT) does not have any effect on her *Monell* claim. (Am. Compl., ¶46.) She says that in a deposition in that case, the City of New York testified that "in regards to protest police training it did not review (i) decline to prosecute decisions, (ii) conviction conversion rates, or (iii) allegations and settlements in lawsuits relating to protest." (Am. Compl., ¶46.) She alleges that in a 2017 deposition the City of New York could identify "no impact litigation against [d]efendant City between 2000 and 2011 had on Defendant City's relevant policies, practices, and customs. (Am. Compl., ¶48.) But neither of these two allegations are admissions that the City fails to train its police officers regarding dispersal orders or anything within that realm. Plaintiff is attempting to conflate two separate issues. But a claim for failure to train is tenuous to begin with, and these flimsy references by plaintiff do not give her the support she seeks.

2. *Plaintiff Fails to Plead Any of the Prongs Required for Failure to Train.*

Even if the handful of citations by plaintiff was adequate, she still fails to adequately plead *Monell*. This is because plaintiff fails to plead in any meaningful manner that: (1) any policymaker knew to a moral certainty that their employees would confront a situation like that described in the Amended Complaint; that there is a history of employees mishandling the situation; and that the wrong choice by a city employee will frequently cause the deprivation of a citizen's constitutional rights. *See Jenkins*, 478 F.3d at 94.

16

The Amended Complaint contains no non-conclusory allegations that any policymaker knew to a moral certainty that individuals would be stuck between buses at a protest and therefore be unable to comply with dispersal orders. (Am. Compl., ¶¶15-17.) Nor are there any allegations about what any policymaker knew to a moral certainty at all. Though plaintiff vaguely alleges that "NYPD have been sued repeatedly for the failure to provide meaningful opportunities to comply with dispersal orders," nothing she cites to support this assertion. (Am. Compl., ¶39.) Nor is her allegation that there have been "numerous lawsuits, judgments, and settlements on the issue [of policing protests]" anything but conclusory. (Am. Compl., ¶¶44-45.) Plaintiff fails to adequately plead that any failure to train was the result of a conscious choice and not mere negligence, which is the operative inquiry.

Based on the Amended Complaint, there is no allegation that there is a history of mishandling this type of specific situations. There is no history identified in the Amended Complaint, beyond *Dinler*, a case from nearly fifteen years ago. Nor can it be said that the need to act was so obvious and the inadequacy of current practices so likely to result in a deprivation of rights, that the City can be found deliberately indifferent to any need. And plaintiff does not provide any allegations to support that the current practices were inadequate.[17]

Beyond relying on these scant citations, plaintiff appears to reply entirely on her own account to support her claim for municipality liability. This is not enough. "Seasoning an allegation of one-off conduct with catchphrases from leading Supreme Court cases is not sufficient to state a *Monell* claim." *Williams v. City of New York*, No. 14 Civ. 5123 (NRB), 2015

_____

[17] The opposite would seem to be true. At least one federal jury in the Southern District has rejected a plaintiff's claims of false arrest at protests. In *Debora Poo Soto*, 13 Civ. 8474 (JPO), a jury found that a plaintiff's constitutional rights were not violated when she was arrested following a dispersal order at an Occupy Wall Street Protest. See Soto, ECF No. 203 at 2; see also *Soto v. City of New York, et al.*, No. 13 Civ. 8474 (LTS), 2017 U.S. Dist. LEXIS 31296 (S.D.N.Y. Mar. 6, 2017). Thus, it cannot be said that current practices are likely to result in a deprivation of constitutional rights. .

U.S. Dist. LEXIS 94895, at *18 (S.D.N.Y. July 21, 2015). The incident raised in the Amended Complaint "cannot meet the high standard required to allege that the City was on notice that its training program was so deficient that by failing to alter it, the City was essentially complicit in the violation of [p]laintiff's constitutional rights." *Pluma v. City of New York*, No. 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134, at *35 (S.D.N.Y. Mar. 31, 2015)

Thus, plaintiff fails to adequately plead any theory of municipal liability. [18] This claim against the City of New York should be dismissed.

### B. *Any Construable Claim for Municipal Liability Should Be Bifurcated.*

Assuming *arguendo* that plaintiff has satisfactorily pleaded that the City has failed to train its police officers to give protestors a meaningful opportunity to disperse following orders at protests, any claim for municipal liability should be bifurcated.

Rule 42(b) of the Federal Rules of Civil Procedure provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). *See also Ricciuti v. New York City Transit Auth.*, 796 F. Supp. 84, 86 (2d Cir. 1999). "It is also established that bifurcation requires the presence of only one of these conditions." *Id.*

Bifurcation "may be appropriate where … the litigation of the first issue might eliminate the need to litigate the second issue." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (citation omitted). "This practice makes sense, because in order to establish liability against municipal defendants in a *Monell* claim, a plaintiff must prove both that [s]he suffered a constitutional violation and that the constitutional harm suffered was a result of a municipal

---

[18] And while not necessary an argument that can be advanced on a Rule 12(b)(6) motion where defendants must accept plaintiff's allegations as true, plaintiff ignores that they may be probable cause for her arrest for reasons other than those she has identified in the Amended Complaint.

policy or custom." *Brown v. City of New York*, No. 13 Civ. 6912 (TPG), 2016 U.S. Dist. LEXIS 18670, at *4 (S.D.N.Y. Feb. 16, 2016) (citing *Monell*, 436 U.S. at 694-95). This is because it is "a plaintiff must prove the denial of a constitutional right by a municipal officer in order to hold a municipality liable under *Monell*." *Aquino v. City of New York*, No. 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 76402, at *2-3 (S.D.N.Y. May 19, 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)).

Indeed, as "[t]he overwhelming weight of authority holds that since the City's liability is derivative of the individual defendants' liability, and since the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established." *Morales v. Irizarry*, No. 95 Civ. 5068 (AGS) (HBP), 1996 U.S. Dist. LEXIS 15613, at *3 (S.D.N.Y. Oct. 17, 1996).

"Courts in this Circuit favor bifurcating *Monell* claims." *Mineo v. City of New York*, No. 09-cv-2261, 2013 U.S. Dist. LEXIS 46953, at *4 (E.D.N.Y. Mar. 29, 2013) (citing *Williams v. City of New York*, No. 07-cv-5362 (NG) (VVP), 2008 U.S. Dist. LEXIS 104730, at *8 (E.D.N.Y. Dec. 29, 2008)); *Tabor v. City of New York, et al.*, No. 11-cv-0195 (FB), 2012 U.S. Dist. LEXIS 29004, at *31-32 (E.D.N.Y. Feb. 23, 2012) (collecting cases). As there is no *Monell* liability without first finding a constitutional violation, bifurcation is generally appropriate.

This is a simple, non-complex case. There are two defendants, one plaintiff, and garden variety emotional damages. Bifurcation would promote the goals of Rule 42 of the Federal Rules of Civil Procedure: expediency and economy.

Starting with expediency, this case is not complicated and discovery can be completed in in a reasonable amount of time. Discovery on the underlying claims will be limited to the

depositions of the parties and a focused document production.  This will not take long.  Indeed, defendants have already produced almost all the documents in their possession pursuant to Rule 26 of the Federal Rules of Civil Procedure.  This production was 161 pages and included three audio files.   In contrast, *Monell* discovery will be a much more time-consuming process. Plaintiff has indicated that to support any *Monell* claim, she will be seeking documents related to training and policies, Rule 30(b)(6) testimony, and potentially even  more.   Indeed, should the Court determine that plaintiff's *Monell* claim withstands this Rule 12 motion, "[j]udging by the pleadings, such [discovery] could be a time-consuming and elaborate affair" because one out of the cases that plaintiff relies on, *Dinler*,  is almost twenty years old.  *Ricciuti*, 796 F. Supp. at 86; *see also Mei Ling Lin v. City of New York*, No. 14 Civ. 9994 (PAE), 2015 U.S. Dist. LEXIS 199152, at *3 (S.D.N.Y. Nov. 17, 2015) ("The Court is particularly mindful that deposing high ranking police officials, as plaintiff has requested, would burden, potentially needlessly, public officials with productive jobs to do.").  This sort of discovery will take time.  It expands a non-complex case that can be resolved in just a few months into one that may not be resolved for half a decade.   It will delay a simple action.

Nor does focusing now on any claim for *Monell* promote economy.  Bifurcation would. First, it is not economical or efficient to focus on a claim that may be easily eliminated. Although defendants cannot contest plaintiff's version of events on a Rule 12 motion; on a Rule 56 motion, defendants will demonstrate that plaintiff was arrested because she interfered with another individual's arrest.   What plaintiff's theory of *Monell* is premised on—that she was arrested because of a failure to comply with a dispersal order—is not relevant and not viable.[19]

---

[19] For this reason, should plaintiff argue on opposition that defendants' qualified immunity defense disfavors bifurcation, her argument should be discarded.  True, qualified immunity is not a shield that the municipality enjoys. But contrary to any potential assertions by plaintiff, if qualified immunity is granted that does not necessarily mean that plaintiff's *Monell* claim can automatically proceed. The incontrovertible evidence will demonstrate that plaintiff

Therefore, it is not economical to engage in *Monell* discovery until the Court considers the underlying claims with the benefit of a full record. Second, *Monell* discovery will be expensive. This sort of *Monell* discovery that plaintiff seeks will be expend the City's limited resources. Plaintiff's damages are essentially *de minimis*.[20] *Monell* discovery and litigation is an attempt to exaggerate and add value to plaintiff's action. Conducting *Monell* discovery now—before liability is determined—bloats plaintiff's lawsuit. It turns a lean lawsuit into a puffed up one. Finally, bifurcation ensures the Court's time (and a jury's time) are not wasted on a claim that will be eliminated. Indeed, convenience and economy are "served . . . . because bifurcation could lead to an earlier and less costly disposition." *Ricciuti*, 796 F. Supp. at 85. Engaging in *Monell* discovery prior to plaintiff proving an underlying constitutional violation—in this case, false arrest—is not economical. Nor is it logical.

Should plaintiff's claim withstand defendants' anticipated motion for summary judgment, her municipal liability claim would be ripe at that time. Occupying the parties' time with discovery related to a claim that may not even go forward is wasteful, hinders this action, and distract from the underlying question at issue. The Court should bifurcate plaintiff's claim for municipal liability, as is the consensus in this Circuit. A lean, focused case can be more economically, expeditiously, and efficiently litigated than a bloated one.[21]

---

was arrested for interfering with another person's arrest; and not merely for failing to comply with a dispersal order. Thus, her *Monell* claim will be unable to proceed because she cannot show that any municipal policy was the moving force behind any cognizable constitutional violation.

[20] It will also afford plaintiff's counsel the unnecessary opportunity to churn attorney's fees.

[21] Should the Court find that any material issue of disputed fact exists concerning plaintiff's false arrest claim, defendants reserve the right to move for a bifurcated trial on the basis of prejudice. *See e.g. Jenkins v. City of New York*, No. 15-cv-5889 (RJD), 2019 U.S. Dist. LEXIS 131691 (E.D.N.Y. Aug. 6, 2019).

**III. The Court Should Not Grant Plaintiff Leave to Amend.**

Leave "to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) (citation omitted). "A determination that a proposed claim is futile is dictated by the same standards that govern a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (citations omitted). Thus, a proposed amendment is futile if it would be subject to dismissal for failure to state a claim. *Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999). When the problem with a plaintiff's cause of action is substantive, "better pleading will not cure it. Re-pleading thus would be futile. Such a futile request to re-plead should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Plaintiff's claims in the Amended Complaint for fair trial and municipal liability are ripe for dismissal as a matter of law. The problems in the Amended Complaint are substantive. Better pleading will not cure these problems. Further pages and paragraphs cannot and will not remedy these intrinsic failures. There are no more facts to add that would not be an exercise in futility. Thus, leave to amend should not be granted.

## **CONCLUSION**

For the foregoing reasons, defendants City of New York, Inspector Gerard Dowling, and Sergeant Matthew Tocco respectfully request that the Court grant their motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and dismiss all of the aforementioned claims with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 17, 2021

**GEORGIA M. PESTANA**
ACTING CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-3523

By: _____
Brachah Goykadosh
*Senior Counsel*
Special Federal Litigation Division