UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
CHRISTINA GAVIN,

             Plaintiff,

     - against -


THE CITY OF NEW YORK, POLICE SERGEANT
MATTHEW TOCCO (TAX ID 940805), AND
INSPECTOR GERARD DOWLING (TAX 915640),

             Defendants.
--------------------------------------------------------------------------------X

20 CV 8163 (JPO)

---

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO THE DEFENDANTS' PARTIAL MOTION TO DISMISS

---

J. Remy Green, Esq.
Jessica Massimi, Esq.
COHEN & GREEN P.L.L.C.
1639 Centre Street, Suite 216
Ridgewood, NY  11385
929-888-9480
remy@femmelaw.com
jessica@femmelaw.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 1

STANDARD OF REVIEW ....................................................................................................... 5

ARGUMENT ............................................................................................................................. 6

POINT I

PLAINTIFF HAS PROPERLY PLED A DENIAL OF HER FAIR TRIAL RIGHTS. ............. 6

POINT II

PLAINTIFF HAS PROPERLY PLED CLAIMS FOR MUNICIPAL LIABILITY. ................... 9

   A.   Plaintiff Has Adequately Alleged that the Failure to Train and Supervise NYPD
Employees Resulted in Her Constitutional Violation. ............................................................ 9

   B.   Plaintiff Has Adequately Alleged the Existence of a Persistent Practice Necessary to State
a Viable *Monell* Claim. ........................................................................................................ 15

   C.   Plaintiff Has Adequately Pled That the City's Municipal Policies Led to The Individual
Defendants' Violations of Plaintiff's Rights. ........................................................................ 18

   D.   The Court should Deny Defendants' Request for Bifurcation of *Monell* Discovery. ........ 19

POINT III

PLAINTIFF SHOULD BE PERMITTED TO AMEND THE COMPLAINT ...................... 22

CONCLUSION ........................................................................................................................ 23

## **TABLE OF AUTHORITIES**

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ............................................................. 10

*Ambrose v. City of New York*, 623 F. Supp. 2d 454 (S.D.N.Y. 2009) ................................... 19

*Amnesty America v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) ................................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937  (2009) ....................................................... 6

*Askins v. Doe*, 727 F. 3d 248 (2d Cir. 2013) ......................................................................... 20

*Baines v. City of New York*, 2016 U.S. Dist. LEXIS 58576 (S.D.N.Y. May 3, 2016)............................ 20

*Bangura v. The City of New York*, 7-CV-2966(DRH)(ETB), 2009 U.S. Dist. LEXIS 808 (E.D.N.Y. Jan.

    7, 2009) ......................................................................................................................... 17

*Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) .............................. 20

*Bd. Of Cty. Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397 (1997)...................................... 11,19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 6

*Bermudez v. City of New York*, 2019 U.S. Dist. LEXIS 3442, 2019 WL 136633 (E.D.N.Y., Jan. 8, 2019)

    ....................................................................................................................................... 20

*Brodeur v. City of New York*, 99-CV-651 (WHP), 2002 U.S. Dist. LEXIS 4500 (S.D.N.Y. 2002) .......... 5

*Case v. City of New York*, 233 F. Supp. 3d 372, 404, 2017 U.S. Dist. LEXIS 19374, 2017 (S.D.N.Y.

    Feb. 10, 2017) ...................................................................................................... 4, 9, 12, 18

*Castilla v. City of New York*, 9-CV-5446 (SHS), 2011 U.S. Dist. LEXIS 95619 (S.D.N.Y. Sept. 6, 2012)

    ....................................................................................................................................... 16

*Ceglia v. Zuckerberg*, No. 10-CV-0569A(F), 2012 U.S. Dist. LEXIS 18438 (W.D.N.Y. Feb. 14, 2012) . 5

*Chamberlain v. City of White Plains*, 986 F.Supp.2d 363 (S.D.N.Y 2013) ............................................ 15

*Chhetry v. U.S. Dep't of Justice*, 490 F.3d 196 (2d Cir. 2007) ................................................. 5

*City of Canton v. Harris*, 489 U.S. 378 (1989).................................................................. 11, 12, 19

*Colon v. City of New York*, Nos. 09 Civ. 8, 09 Civ. 9, 2009 U.S. Dist. LEXIS 110520, 2009 WL
4263362, at *2 (E.D.N.Y. Nov. 25, 2009) .............................................................. 4, 13

*Connick v. Thompson*, 563 U.S. 51 (2011) ............................................................... 11, 15

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104 (2d Cir. 2010) ...................................... 6

*DiPippo v. Cty. Of Putnam*, 17-CV-7948 (NSR), 2019 U.S. Dist. LEXIS 33071 (S.D.N.Y. Feb. 28,
2019) ................................................................................................................. 15

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016) ................................................... 6

*Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir. 1984) ......................................... 21

*Edrei v. City of New York*, 254 F. Supp. 3d 565, 2017 U.S. Dist. LEXIS 83269 (S.D.N.Y. May 31,
2017)(RWS) ........................................................................................................ 15

*Felix v. City of New York*, 344 F. Supp.3d 644 (S.D.N.Y. 2018) ................................. 15

*Gogol v. City of New York*, No. 15 CV 5703, 2017 U.S. Dist. LEXIS 221874, 2018 WL 4616047
(S.D.N.Y. Sept. 26, 2018) .................................................................................... 20

*Goode v. Newton*, 12-CV-754 (JBA), 2013 U.S. Dist. LEXIS 35171 (D. Conn. Mar. 14, 2013).......... 16

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) .......................................................... 6

*Jenkins v. City of New York,* 478 F.3d 76 (2d Cir. 2007) ............................................ 11

*Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013) ........................................... 21

*Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, F.3d 160 (2d Cir. 2015) ................. 22

*MacNamara v. City of New York* No. 04 Civ. 9216, 2007 U.S. Dist. LEXIS 79870, 2007 WL 3196295
(S.D.N.Y. Oct. 30, 2007) ...................................................................................... 4, 18

*Mandal v. City of New York*, Nos. 02 Civ. 1234, 02 Civ. 1367, 2007 U.S. Dist. LEXIS 83642, 2007 WL
3376897 (S.D.N.Y. Nov. 13, 2007) ........................................................................ 4, 18

*McDonough v. Smith*, 139 S. Ct. 2149 at 2160 n.10 (2019) ....................................... 8

*Michael v. County of Nassau*, 9-CV-5200 (JS)(AKT), 2010 U.S. Dist. LEXIS 82764 (E.D.N.Y. Aug. 11, 2010) .................................................................................................................. 16, 17

*Nnodimele v. Derienzo*, No. 13 CV 3461 (ARR)(RLM), 2016 WL 3561708 (E.D.N.Y. June 27, 2016)  20

*Osterhoudt v. City of New York*, No. 10 Civ. 3173, 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927 (E.D.N.Y. Sept. 27, 2012) ................................................................................. 4, 13, 18

*Packer v. Skid Roe, Inc.*, 938 F.Supp. 193 (S.D.N.Y. 1996) ............................................... 19

*Ricciuti v. N.Y.C Transit Authority*, 941 F.2d 119 (2d Cir. 1991) .................................... 7, 10

*Ross v. City of NY,* 2019 US Dist LEXIS 169762 (EDNY Sep. 30, 2019) .......................... 7

*Smalls v. Collins*, No. 14 Civ. 02326 (CBA) (RML) 2020 WL 2563393 (E.D.N.Y. Mar. 16, 2020) ....... 8

*Sorlucco v. New York City Police Department*, 971 F.2d 864 (2d Cir. 1992) ........................ 10

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .............................. 4, 14

*Tyus v. Newton*, 13-CV-1486 (SRU), 2015 U.S. Dist. LEXIS 42089 (D. Conn. Mar. 31, 2015) .......... 16

*United States v. Allick*, No. 2011-020, 2012 U.S. Dist. LEXIS 948 (D.V.I. Jan 5, 2012) ..................... 5

*Wang v. Pataki*, 396 F.Supp.2d 446 (S.D.N.Y. 2005) ......................................................... 5

*Wellner v City of NY*, 393 F Supp 3d 388 (SDNY 2019) ................................................... 7

*Williams v. Citigroup, Inc.,* 698 F.3d 208 (2d Cir. 2011) ................................................. 22

*Williams v. City of New York*, 121 F. Supp. 3d 354, 373-374, 2015 U.S. Dist. LEXIS 103116 (S.D.N.Y. Aug. 5, 2015) .................................................................................................... 11

**Statutes**

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 6

Fed. R. Civ. P. 8(a)(2) ................................................................................................. 6

Fed. R. Civ. P. 8(d)(3) ................................................................................................. 7

Fed. R. Civ. P. 15(a)(2)..............................................................................................................29

**Treatises**

5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007) ................................................5, 19

## PRELIMINARY STATEMENT

The New York City Police Department's ("NYPD") mass-arrest related policies and practices at protests has been widely criticized as unconstitutional and comprised of human rights abuses. As is well known, the NYPD frequently manufactures the protest conditions which they then claim justify the brutalization of peaceful protesters and their continued presence at protests. As has been widely reported and litigated, the NYPD does this using a variety of tactics such "kettling" or other similar techniques *before* issuing orders, thereby intentionally creating chaos and preventing protesters from complying with such orders.[1] This is another such case.

## STATEMENT OF FACTS

Defendant Police Sergeant Matthew Tocco and Defendant Police Inspector Gerard Dowling arrested and assaulted Plaintiff while she was lawfully protesting. Defendants City of New York ("City"), Tocco and Dowling have moved to dismiss Plaintiff's First Amended Complaint ("FAC"), ECF No. 22, annexed to the Declaration of Jessica Massimi as Exhibit "1," suggesting for the first time in their memorandum of law in support of their motion to dismiss ("DMOL" at ECF No. 26) that "only plaintiff had trouble complying with the dispersal order at the protest and only plaintiff was arrested because of failure to comply with a dispersal order." *Id.* at footnote 10; *but see contra, id.* at 20 n. 19 ("The incontrovertible evidence will demonstrate that plaintiff was arrested for **interfering with another person's arrest**") (emphasis added). However, Defendants swore out a false criminal complaint against Plaintiff stating that "Plaintiff jumped on top of Inspector Dowling's back while defendants Tocco and Dowling were making a lawful arrest of another individual for blocking vehicle

---

[1] *See, for example,* "*Kettling" Protesters in the Bronx: Systemic Police Brutality and Its Costs in the United States*, Human Rights Watch (Sept. 2020) https://www.hrw.org/sites/default/files/media_2020/10/us_mott%20haven0920_web.pdf; *The "Kettling" of Protesters, Explained* (June 6, 2020) https://www.vox.com/2020/6/6/21282509/george-floyd-protests-kettling-new-york-nypd; *Police "Kettle" Protesters in Manhattan, Arresting Dozens* (Nov. 4, 2020) https://www.nytimes.com/2020/11/04/nyregion/nyc-presidential-election-protests.html.

traffic and refusing to go onto the sidewalk." (FAC ¶29). [2] Defendants' ever-evolving story is further evidence that they will say anything to suit their needs – no matter how demonstrably false – and that their allegations against Plaintiff in her criminal complaint are false and were manufactured by Defendants to justify the NYPD's violent presence at a lawful protest and Defendants' assault and arrest of Plaintiff.[3]

On November 22, 2019, Plaintiff was at the protest near 158 West 125th Street in Manhattan. (FAC ¶10.) Shortly after the protest began, members of the NYPD began "corall[ing]" protesters and forcing them into the street. (FAC ¶ 11.)[4] Over a loudspeaker, members of the NYPD played a pre-recorded statement baselessly declaring the protest illegal and instructing protesters to leave the street and get on the sidewalk. (FAC ¶ 12.) Plaintiff immediately attempted to obey this instruction and leave the street, but had difficulty doing so because she was located between two large public buses blocking direct access to the sidewalk. (FAC ¶¶ 13-14.)

Nonetheless, Plaintiff did her best to comply with the order projected over the pre-made recording, and looked past crowds on her right and traffic on her left for the first clear path to the sidewalk. (FAC ¶¶ 15-16.) While attempting to comply with the pre-recorded order, Defendant Sergeant Matthew Tocco confronted Plaintiff and demanded, in sum and substance, "Where do you think you're going?," forcefully grabbing Plaintiff's left arm. (FAC ¶ 17.) Plaintiff responded, saying, "I'm trying to get to the sidewalk." Defendant Tocco responded by yelling at Plaintiff to "shut the

---

[2] The fact that Defendants argue in their criminal complaint that one other person was taken into custody is significant because Plaintiff may seek discovery on this arrest to support her *Monell* claims. Indeed, news reports have stated that dozens of individuals were taken into custody as a result of this protest. *See, for example*, "Hundreds Pack Harlem Streets to Protest Arrest of Subway Food Vendors, Dozens Taken Into Custody," CBS New York (Nov. 22, 2019) https://newyork.cbslocal.com/2019/11/22/harlem-protest-arrest-subway-food/ ("The NYPD says 58 people were arrested during Friday's protests, mostly for disorderly conduct and blocking traffic."). As discussed below, citations to news and media reports are proper on a motion to dismiss.

[3] Defendants swore to other demonstrably false allegations in Plaintiff's criminal complaint, such as the date, alleging that the incident occurred a day before it actually did.

[4] This allegation is simply omitted in Defendants' motion — seemingly so Defendants can try to argue that this case is unlike the dozens of previous *Monell* cases about the same policies.

fuck up!," while Defendant Inspector Gerard Dowling immediately grabbed Plaintiff's right arm. (FAC ¶ 18.)

Defendants Tocco and Dowling then kicked Plaintiff's feet out from under her causing Plaintiff to fall to the ground and sustain abrasions to her legs. (FAC ¶ 19.) Defendants then handcuffed Plaintiff. (FAC ¶ 20.) At no time had Plaintiff violated any law. The Defendants lacked any probable cause for arresting Plaintiff, and lacked any justification for using any force on Plaintiff. The Defendants in fact intentionally interfered with Plaintiff's ability to obey their orders. (FAC ¶¶ 20-22.)

Defendants then transported Plaintiff to the stationhouse of a local area precinct, and swore out false allegations against Plaintiff in a criminal complaint. (FAC ¶¶ 23-28.) In support of the criminal complaint, Defendants Tocco and Dowling made several false allegations, including but not limited to, alleging that Plaintiff leapt on top of Inspector Dowling's back while Defendants Tocco and Dowling were making a lawful arrest of another individual for blocking vehicle traffic and refusing to go onto the sidewalk. (FAC ¶ 29.) Knowing that their allegations were false, Defendants Tocco and Dowling nonetheless forwarded their story to the New York County District Attorney's Office. (FAC ¶¶ 30-31.) At her arraignment, Plaintiff acceded to an adjournment in contemplation of dismissal and her charges were eventually dismissed. (FAC ¶ 32.)

For decades, NYPD has engaged in a persistent practice of violating the constitutional rights of lawful protesters by (1) failing to provide adequate dispersal notices; (2) failing to provide a meaningful opportunity to comply with such notice to such a degree that it constitutes a custom and usage of the City; and (3) actively thwarting protesters' from complying with any orders. (FAC ¶ 36.) Members of the NYPD engage in this persistent practice either directly, by facilitating such constitutional violations, or by failing to prevent such violations – to such a degree that the City was on notice of its need to protect protesters from the NYPD. *See,* for example, FAC ¶¶ 36-49, 64-74

(citing to three cases which in turn contain citations to dozens of other cases which "demonstrate 'a pattern and practice of constitutional abuse' involving the use of mass arrest policies and practice similar to the ones that led to their constitutional deprivations." *Case v. City of New York*, 233 F. Supp. 3d 372, 404, 2017 U.S. Dist. LEXIS 19374, *65, 2017 (S.D.N.Y. Feb. 10, 2017)[5] (citing *Mandal v. City of New York*, Nos. 02 Civ. 1234, 02 Civ. 1367, 2007 U.S. Dist. LEXIS 83642, 2007 WL 3376897, at *2 (S.D.N.Y. Nov. 13, 2007), *MacNamara v. City of New York* No. 04 Civ. 9216, 2007 U.S. Dist. LEXIS 79870, 2007 WL 3196295, at *1 (S.D.N.Y. Oct. 30, 2007), *Osterhoudt v. City of New York*, No. 10 Civ. 3173, 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927, at *1-2 (E.D.N.Y. Sept. 27, 2012)).[6]

The media and Human Rights Watch have widely reported on the very tactics Plaintiff complains of here, lending further support to her *Monell* claims. *See, for example, "Kettling" Protesters in*

---

[5] Defendants largely miss the significance of *Case*. While they insist that *Case* reflects "a single isolated incident" (DMOL at 14 n. 13), that insistence is both factually wrong (*Case* is a *Monell* case, about longstanding policies and practices) and *also* misses the forest for the trees. The decision in *Case* reviews hundreds upon hundreds of paragraphs in Local Rule 56.1 practice, and thousands of pages of testimony and documents. Reviewing that massive volume of paper, the Court found that there *was* a "lack of evidence" showing that NYPD "trains officers in the manner in which to inform demonstrators they must move or disperse," "how many warnings to give before taking enforcement action, and the "length of time for providing meaningful opportunities for compliance." *Case v. City of NY*, 408 F Supp 3d 313, 329 (S.D.N.Y. Sept. 30, 2019). That is, the *Case* plaintiffs "made the requisite showing of specific training deficiencies." *Id.* What remains in *Case* as a question for the jury is not proof of the NYPD's lack of training, but whether the "adequacy of such training has a direct causal link to Kushneir's false arrest. *Id.* That same policy still exists (the relevance of the OCC report and others cited) and caused Plaintiff's arrest.

More broadly, all that a complaint requires is a short, plain statement demonstrating an entitlement to relief. That is what is pled here. However, if the Court is inclined to grant a motion for lack of detail on the policies, Plaintiff asks for permission to amend, so she can include a similar collection of hundreds of paragraphs, just as was included in the *Case* summary judgment practice — and if those paragraphs can make the "requisite showing of specific training deficiencies" on summary judgment, they can surely do the same on a motion to dismiss.

[6] These quotes and citations are properly considered on a motion to dismiss. "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. See 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)." *Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added); *Colon v. City of New York*, Nos. 09 Civ. 8, 09 Civ. 9, 2009 U.S. Dist. LEXIS 110520, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) (denying motion to dismiss where plaintiff's allegation that officers manufactured drug evidence, combined with the court's "knowledge of cases in other federal and state courts," stated a plausible *Monell* claim). The *Case* quote and citations are incorporated by reference into Plaintiff's First Amended Complaint because, as discussed below the quotes are from the decision from the Honorable Analisa Torres denying the City's attempt to dismiss similar *Monell* claims, and the case citations are contained in the Complaint of *Case* the content of which is referenced in Plaintiff's First Amended Complaint. First Amended Complaint, ECF No. 22 ¶ 39.

*the Bronx: Systemic Police Brutality and Its Costs in the United States*, Human Rights Watch (Sept. 2020)

https://www.hrw.org/sites/default/files/media_2020/10/us_mott%20haven0920_web.pdf

("Video footage and accounts from protesters and observers reveal a frenzied and chaotic scene as the protesters realized that they were trapped. . . Video footage that Human Rights Watch verified showed that police kettled the protesters by 7:56 p.m. – before the 8 p.m. curfew. . . At 8:06 p.m. – after the protesters were trapped in the kettle and the arrests had already begun – the police played a recording that said: 'Beginning at 8 p.m., a citywide curfew will be in effect.' Many protesters told Human Rights Watch they could not hear or understand the recording, but those who did wondered how they could go home when they were trapped by the police.").[7]   In other words, the policies and practices at issue have existed and been in force for a long time, and remained in force this summer.

## **STANDARD OF REVIEW**

A proper complaint consists of a "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  It is not meant to be an extensive document attaching exhibits, historical records, and proof that the allegations are true.  Rather, it alleges facts. So, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court typically must accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's favor." *Brodeur v. City of New York*, 99-CV-651 (WHP), 2002 U.S. Dist. LEXIS 4500, at *6 (S.D.N.Y. 2002) (internal

---

[7] The Court may also take judicial notice of these quotes. *Chhetry v. U.S. Dep't of Justice*, 490 F.3d 196, 199–200 (2d Cir. 2007) (citation omitted) (stating, in an immigration appeal, that the Board of Immigration Appeals (BIA) could take judicial notice of "changed country conditions based on news articles found on yahoo.com, or the websites of CNN and BBC News," and indicating that the BIA, like the Second Circuit itself, could "exercise independent discretion to take judicial notice of . . . changes in a country's politics" because the articles accessed on the Internet came "from reputable news organizations"); *see also Ceglia v. Zuckerberg*, No. 10-CV-0569A(F), 2012 U.S. Dist. LEXIS 18438, at *34 & n.10 (W.D.N.Y. Feb. 14, 2012)(taking judicial notice of worth of Facebook via article available on Wall Street Journal's internet site noting that "[i]t is generally proper to take judicial notice of articles and Web sites published on the Internet"); *Wang v. Pataki*, 396 F.Supp.2d 446, 458 n.2 (S.D.N.Y. 2005) (taking judicial notice of Village Voice newspaper and its "web equivalent" as being "newspapers of general circulation," *citing Hotel Employees & Restaurant Employees Union, Local 100 v. New York Department of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir. 2002)); *United States v. Allick*, No. 2011-020, 2012 U.S. Dist. LEXIS 948, at *14 & n.7 (D.V.I. Jan 5, 2012) (taking judicial notice of airline flights between Puerto Rico and St. Croix reflected on www.flights.com to refute defendant's claim that flights between the two locations were uncommon).

citations omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544 (2007).[8]

In deciding a Rule 12(b)(6) motion, the Court's role is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010) (citation omitted). "Furthermore, the plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) (citing Fed. R. Civ. P. 8(d)(3)) ("A party may state as many separate claims ... as it has, regardless of consistency"); *Gregory v. Daly*, 243 F.3d 687, 701 n. 12 (2d Cir. 2001).

## ARGUMENT
### POINT I
### PLAINTIFF HAS PROPERLY PLED A DENIAL OF HER FAIR TRIAL RIGHTS.

A plaintiff states a denial of the right to fair trial claim by alleging that the Defendants

---

[8] Similarly, in the context of summary judgment motions, the Supreme Court has emphasized the "importance of drawing inferences in favor of the nonmovant." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014). "By weighing the evidence and reaching factual inferences contrary to [Plaintiffs'] competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." Id. at 1868. These principals must also apply in the Fed. R. Civ. P. 12(b)(6) context where discovery has not even taken place. Indeed "[a] party endeavoring to defeat a lawsuit by a motion to dismiss for failure to state a claim faces a 'higher burden' than a party proceeding on a motion for summary judgment." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004).

fabricated evidence that was likely to influence a jury, forwarded that information to prosecutors, and that the plaintiff suffered a deprivation of liberty as a result. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129-130 (2d Cir. 1997). There is no question that Plaintiff has alleged that Defendants fabricated a story against her and forwarded it to the New York County District Attorney's Office: "Plaintiff [never] jumped on top of Inspector Dowling's back while defendants Tocco and Dowling were making a lawful arrest of another individual for blocking vehicle traffic and refusing to go onto the sidewalk." (FAC at ¶29). Saying so was a lie.[9]

District Courts in this Circuit are split on how to analyze a fair trial rights claim where a Plaintiff has accepted an Adjournment in Contemplation of Dismissal ("ACD") post-*McDonough v. Smith*. While Defendants are, of course, aware of the cases running contrary to their argument, they fail to cite them. There are a number of courts finding that, "consistent with the well-established rule in this Circuit, [] an ACD does not preclude [a] Plaintiff's fair trial claim." *Ross v. City of NY*, 2019 US Dist LEXIS 169762, at *19-20 (EDNY Sep. 30, 2019); *See also, Wellner v City of NY*, 393 F Supp 3d 388, 396 (SDNY 2019) (*McDonough* does not add a favorable termination element to a fair trial claim). And as we previously pointed out, the Second Circuit is set to resolve this dispute soon.[10] *See, e.g.,* ECF No. 27; 30.

But each district court should evaluate the issue for itself. The courts finding that ACDs categorically bar future fabrication of evidence claims are departing from a long and "well-

---

[9] Defendants cannot seem to decide whether they want to argue no one else was arrested at the protest (DMOL at 9 n. 10) or that others were arrested (DMOL at 20; 20 n. 19).

[10] And that resolution may even be mooted shortly after. The Supreme Court has granted cert to resolve a split, not on fair trial rights, but on *Heck* and *McDonough* more generally. *See Thompson v. Clark,* Docket No. 20-659, *pet. granted* Mar. 8, 2021. That split is between circuits requiring "a manner that is *indicative of* Plaintiff's innocence" in a termination under *Heck* (*Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018) (emphasis in original)) and those finding that "the only final terminations that would bar a plaintiff's suit were those that were *inconsistent* with a plaintiff's innocence—that is, if a jury convicted the plaintiff or if the plaintiff compromised with his accuser to end the prosecution in a way that conceded his guilt" (*Laskar v. Hurd*, 972 F.3d 1278 (11th Cir. 2020) (emphasis added)).

established rule." *Ross*, 2019 US Dist LEXIS 169762, at *19. And more than that, they are doing so based on an aside in *McDonough* that is explicitly dicta: Justice Sotomayor began the relevant passage by warning "Because McDonough's acquittal was unquestionably a favorable termination, we have no occasion to address the broader range of ways a criminal prosecution (as opposed to a conviction) might end favorably to the accused." *McDonough v. Smith*, 139 S. Ct. 2149 at 2160 n.10 (2019). But *McDonough's* holding about *when* a claim accrued — in that case, when McDonough was acquitted — obviously does not change a long-standing rule by necessity.[11] *See, e.g. Smalls v. Collins*, No. 14 Civ. 02326 (CBA) (RML) 2020 WL 2563393, at *3 (E.D.N.Y. Mar. 16, 2020) ("Although the issue presented in McDonough was the accrual date of a fair-trial claim under 28 U.S.C. § 1983, the opinion's reasoning strongly suggests that the Supreme Court would hold that favorable termination is a requirement of a fair-trial claim, at least in cases in which the plaintiff alleges a deprivation of liberty *resulting from the use of fabricated evidence in a criminal proceeding*.") (emphasis added).[12]

There are also good policy reasons to avoid Defendants' rule. For example, it would obviously be unethical for a prosecutor to, after receiving what she knows to be invented allegations, say, "I will drop these if you agree not to sue the police over them." But if an ACD is automatically an unfavorable termination, the prosecutor can do just that (at least as to the federal fair trial claim) by implication, just by offering an ACD — which results in the end of a prosecution and sealing of the arrest records. And if that rule becomes clear going forward, then the offer of an ACD in cases

---

[11] To this point, it is significant that McDonough *won* — rather than lost. The issue of what elements composed the claim thus were not even before the Court, only whether the claim accrued immediately when a person learned evidence had been fabricated, or when the charges were resolved. And here, there is no issue applying that rule: it accrued upon dismissal.

[12] *Smalls,* one of the cases now at the Circuit on this issue, is particularly instructive because it explicitly carves out a case like this one. *McDonough* is also cabined explicitly on this ground: the Supreme Court adopted the analogy to common law malicious prosecution because "a civil claim such as McDonough's, asserting that fabricated evidence was used to pursue a criminal judgment implicates the same concerns." 139 S Ct at 2152. But the claim here is not about the use of fabricated evidence in a criminal trial or in pursuit of a criminal judgment. It is about its use to secure an illegitimate indictment. So the decision in *Smalls* suggests a different rule applies here.

like this one becomes an implicit quid pro quo: a message that the prosecutor knows the charges are no good, but needs to preserve her police officer witness. If it would be unethical to offer that quid pro quo explicitly, the Court should not adopt a rule that encourages and allows it implicitly.

**POINT II**
**PLAINTIFF HAS PROPERLY PLED**
**CLAIMS FOR MUNICIPAL LIABILITY.**

In this case, Plaintiff raises *Monell* claims predicated on NYPD policies, practices, and customs related to (a) the use of police resources to corral and trap perceived participants in First Amendment assemblies; (b) failing to ensure that constitutionally meaningful and adequate dispersal orders and opportunities to disperse are given prior to effecting arrests in  connection with First Amendment assemblies; and (c) perjury by the NYPD to justify their false arrests and false allegations against protesters.

### A. Plaintiff Has Adequately Alleged that Failure to Train and Supervise NYPD Employees Resulted in Her Constitutional Violation.

It is not in dispute (and is presumed true) that, in the Occupy Wall Street era, NYPD *did not* have meaningful training "the manner in which [officers should] inform demonstrators they must move or disperse," "how many warnings to give before taking enforcement action, and the "length of time for providing meaningful opportunities for compliance." *Case v. City of NY*, 408 F Supp 3d 313, 329 (S.D.N.Y. 2019); *see also* ECF No. 22 ¶¶ 40-43 (describing specific missing policies and the full content of training that does exist); *Case*, ECF No. 137, ¶¶ 256-258; 268-285; 286-347 (Local Rule 56.1 statement describing at length the policies also challenged here, as well as all training on any related topic); ECF No. 138 (Local Rule 56.1 counterstatement also describing the policies challenged here) ¶¶ 102; 109 (NYPD Chief of Department Esposito providing literally a single second to comply with an order to disperse). Nor is it in dispute that there have been "no protest-

related after action reviews undertaken between the 2004 Republican National Convention and until the events of the George Floyd protest." ECF No. 22 ¶¶ 44-45.[13]

A municipality may not be held liable under §1983 simply for the isolated unconstitutional acts of its employees. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978) (rejecting *respondeat superior* as a basis for §1983 liability). Instead, a plaintiff must demonstrate that any constitutional harm suffered was the result of a municipal policy or custom. *Id.* at 690-691; *see also Ricciuti v. N.Y.C Transit Authority*, 941 F.2d 119, 122 (2d Cir. 1991). The policy or custom used to establish liability need not be contained in an explicitly adopted rule or regulation. *Ricciuti*, 941 F.2d at 123. Constitutional deprivations actionable under §1983 may be "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision-making channels." *Monell* at 691. "Congress included customs and usages [in §1983] because of the persistent and widespread discriminatory practices of state officials. . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970). A persistent practice may constitute municipal policy where it is carried out by subordinate employees where their unconstitutional practice is so manifest as to imply the acquiescence of senior policy-making officials. *Sorlucco v. New York City Police Department*, 971 F.2d 864, 871 (2d Cir. 1992).

The City permits a systemic culture of manufacturing protest conditions which they claim justify their false arrest of lawful protesters and their continued presence at peaceful protests in general. Despite being on notice of the widespread civil rights violations of lawful protesters, the City acts with

---

[13] On this point, while counsel seemingly asserts some special knowledge about the Corporation Counsel report, those who participated in researching and drafting the report are walled off from Defendants' counsel. Beyond that, the point of the reports is simple and directly connected to this case: the NYPD had *no* meaningful training on providing meaningful opportunities to disperse, the manner or number of orders, or how long to provide when Occupy Wall Street protests were going on. The Corporation Counsel report and others simply confirm that nothing has changed since then. That is, the same policies courts have already found existed in cases like *Case* have not been changed. That is the relevant "connect[ion] to the facts of this case." DMOL at 24.

deliberate indifference to the substantial risk of harm to Plaintiff and other peaceful protesters. Greater — or indeed, any — supervision and training could have taught members of the NYPD how to police protests without infringing on the rights of protesters.

A plaintiff may state a claim for municipal liability by alleging that a municipal defendant's failure to train or supervise amounts to "deliberate indifference" to rights of those with whom the municipality's employees interact. *City of Canton v. Harris,* 489 U.S. 378, 388 (1989); *Jenkins v. City of New York,* 478 F.3d 76, 94 (2d Cir. 2007). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* 563 U.S. 51, 61 (2011) (quoting *Bd. Of Cty. Comm'rs of Bryan Cty. V. Brown,* 520 U.S. 397, at 410 (1997). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution." *Id.* at 61-62 (quoting *Connick* at 61).

"[A] pattern of similar violations is not absolutely necessary to prove municipal liability for failure to train." *Williams v. City of New York*, 121 F. Supp. 3d 354, 373-374, 2015 U.S. Dist. LEXIS 103116, *40-41 (S.D.N.Y. Aug. 5, 2015). The operative inquiry is whether the municipality was on *notice* that "a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 131 S. Ct. at 1359; *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (the Second Circuit has "never required" proof of a pattern of violations to establish deliberate indifference; "plaintiffs' evidence must establish only that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious.'"). Notice may be proved by

evidence of a pattern of similar violations, *Connick*, 131 S. Ct. at 1359, or by evidence of one injury if "the need for more or different training [was] so obvious, and the inadequacy [of the training] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for different training. *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). "The operative inquiry is whether the[] facts demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" *Cash v. County of Erie*, 654 F.3d 324 at 334 (2d Cir. 2011).

"Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." *Id.* (quoting *Bryan Cty.,* 520 U.S. at 407).

"At the motion to dismiss stage, the Second Circuit uses a three-prong test to determine whether a plaintiff has demonstrated a municipality's 'deliberate indifference' in the context of a failure to train claim." *Case v. City of New York*, 233 F. Supp. 3d 372, 404, 2017 U.S. Dist. LEXIS 19374, *65, 2017 (S.D.N.Y. Feb. 10, 2017) (citing *Walker v. City of New York,* 974 F.2d 293, 297-298 (2d Cir. 1992)). "First, the plaintiff must show that the policymaker knows 'to a moral certainty' that her employees will confront a given situation." *Walker* at 297 (quoting *Canton*, 489 U.S. ay 390 n. 10). "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Id.* And, third, "the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 298

In *Case v. City of New York*, 233 F. Supp. 3d 372, 404, 2017 U.S. Dist. LEXIS 19374, *65, 2017 (S.D.N.Y. Feb. 10, 2017), the Honorable Analisa Torres found that Plaintiffs adequately stated a *Monell* claim based on the City's failure to train where "Plaintiffs point[ed] to a number of cases

spanning the period from 2000 to 2012 that demonstrated 'a pattern and practice of constitutional abuse' involving the use of mass arrest policies and practices similar to the ones that led to their constitutional deprivations." *Id.* at 405. "[I]n the context of Rule 12, where plausibility is an issue, it is hard to ignore these cases, which suggest the conduct complained of is not limited to the four corners of [Plaintiffs'] complaint." *Case* at 406 (quoting *Osterhoudt v. City of New York*, No. Civ. 3173, 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927, at *1-2 (E.D.N.Y. Sept. 27, 2012)). Citations to pending lawsuits and settlements are sufficient at the motion to dismiss stage to "permit a plausible inference of deliberate indifference. *Osterhoudt* at *2; *see also Colon v. City of New York*, Nos. 09 Civ. 8, 09 Civ. 9, 2009 U.S. Dist. LEXIS 110520, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) (denying motion to dismiss where plaintiff's allegation that officers manufactured drug evidence, combined with the court's "knowledge of cases in other federal and state courts," stated a plausible *Monell* claim). As the court in *Osterhoudt* acknowledged, "[s]hould such a de facto policy or practice … exist, it will not likely be shown by direct evidence." 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927, at *2. The Courts in *Osterhoudt* and *Case* recognized the "formidable hurdle" plaintiffs face at the pleading stage, and found that Plaintiffs – by citing to four other cases, some of which with unproved allegations – had "nudged [their] claims across the line from conceivable to plausible." *Case* at *406 (discussing *Osterhoudt* and quoting *Twombly*, 550 U.S. at 570).

So too here. Plaintiff has cited four lawsuits (not just pending, but including findings at the summary judgment stage), a report, and deposition testimony to allege her failure to train claim. These lawsuits, in turn, cite to yet more examples of NYPD civil rights violations of protesters. *Colon v. City of New York*, Nos. 09 Civ. 8, 09 Civ. 9, 2009 U.S. Dist. LEXIS 110520, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) (denying motion to dismiss where plaintiff's allegation that officers manufactured drug evidence, combined with the court's "knowledge of cases in other federal and state courts," stated a plausible *Monell* claim). "[C]ourts *must* consider the complaint in its

entirely, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)).

*Case,* and in turn, *MacNamara* (No. 04 Civ. 9216, 2007 U.S. Dist. LEXIS 79870, 2007 WL 3196295, at *1) and *Osterhoudt* (No. 10 Civ. 3173, 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927, at *1-2 (E.D.N.Y. Sept. 27, 2012)) involved patterns and practices similar to those that harmed Plaintiff, and suffice to plausibly show a pattern. For example, *MacNamara* involved testimony that an arresting officer "was instructed to" "include false information in the narrative section of his booking report," and that as Judge Karas put it, "[m]ore disturbing still, [the officer's] testimony appears to indicate that this unlawful act was not an isolated incident."

And Plaintiff's *Monell* claims also involve allegations of perjury by the NYPD to justify their false arrests and false allegations against protesters. "While it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so." *Walker v. City of New York*, 974 F.2d 293, 300 (2d Cir. 1992). In *Walker*, plaintiff contended that "the police department had an obligation to train and supervise officers not to commit perjury or aid in the prosecution of the innocent." *Walker*, 974 F.2d at 299. The City argued there that the proper response on the part of officers – to not lie – "is so obvious to all without training or supervision" that the "failure to train or supervise" would not produce as wrong decision as to support an inference of deliberate indifference by the City. *Id.* The Court then explicitly ruled that Walker should be permitted to take discovery to see if he could "produce some evidence that policymakers were aware of a pattern of perjury by police officers but failed to institute appropriate training or supervision." *Id.* So too here.

### B.   Plaintiff Has Adequately Alleged the Existence of a Persistent Practice Necessary to State a Viable *Monell* Claim.

Defendants' argument that Plaintiff has not properly alleged a *Monell* claim hinges on two legally incorrect arguments: First, the City's apparent belief that Plaintiff has not cited to enough instances of constitutional violations, though the City does not state what a sufficient number would be. Second, the City's apparent belief that a *Monell* claim may only find support by citing to other instances with *exactly* similar facts (never mind the City's strategic omission of the key, similar facts from the complaint). The City is splitting hairs. Plaintiff's *Monell* claims need not be based on the type of granular similarity of prior incidents suggested by the City. *See Felix v. City of New York*, 344 F. Supp.3d 644, 662 (S.D.N.Y. 2018) ("Even if the precise factual circumstances of these cases vary," plaintiff's allegation that they show NYPD officers mishandled prior encounters with people in mental crises "is at least a plausible one"); *DiPippo v. Cty. Of Putnam*, 17-CV-7948 (NSR), 2019 U.S. Dist. LEXIS 33071, at *31 (S.D.N.Y. Feb. 28, 2019) ( "Defendants' specificity arguments are the most incredulous of them all. DiPippo has alleged numerous specific examples of misconduct that specific PCSD officers engaged in with specific witnesses".)

Similarly, Defendant's assertion that a Plaintiffs' citations to "three cases, two depositions, and one report" does not suffice to support her *Monell* claim ignores a long line of cases, including at the Supreme Court level, finding municipal liability based upon the allegation of a single incident in the context of custom and usage and failure to train and supervise — and it also ignores that the cases cited *involve findings that the de facto (lack of) policies challenged here exist. See Chamberlain v. City of White Plains*, 986 F.Supp.2d 363, 391-92 (S.D.N.Y 2013)(detailing at length that courts that have continued to apply the single-incident theory post the Supreme Court's decision in *Connick v. Thompson*, 563 U.S. 51 (2011), and citing to several cases where courts have applied the single-incident theory); *see also Edrei v. City of New York*, 254 F. Supp. 3d 565, 581, 2017 U.S. Dist. LEXIS 83269, *29 (S.D.N.Y. May 31, 2017)(RWS)(Denying the City's motion to dismiss Plaintiffs'

complaint and holding that "[e]ven in the absence of prior similar violations, the NYC knew that officers with LRADs in the field were likely to face difficult scenarios, such as increasingly agitated protests, where the risk and harm of improperly using LRAD devices are great—problems that could have been avoided with proper training").

District courts in this circuit have denied motions to dismiss *Monell* claims alleging "a custom or policy of tolerating police misconduct" based in part on "at least one other individual prior to the incidents involving the plaintiff." *Tyus v. Newton*, 13-CV-1486 (SRU), 2015 U.S. Dist. LEXIS 42089, at *29-31 (D. Conn. Mar. 31, 2015); *See also Goode v. Newton*, 12-CV-754 (JBA), 2013 U.S. Dist. LEXIS 35171 (D. Conn. Mar. 14, 2013) (denying motion to dismiss where there were non-conclusory allegations of one prior incident of falsifying a police report and manufacturing criminal charges in addition to the two incidents of manufactured criminality in amended complaint); *Castilla v. City of New York*, 9-CV-5446 (SHS), 2011 U.S. Dist. LEXIS 95619, at *12 (S.D.N.Y. Sept. 6, 2012) (denying motion for judgment on the pleadings where plaintiff provided "a string of incidents in which she was victimized by multiple officers in multiple locations, both on and off City property" as well as "various other instances of male police officers taking sexual advantage of females under their custody or control"); *Michael v. County of Nassau*, 9-CV-5200 (JS)(AKT), 2010 U.S. Dist. LEXIS 82764, at *14 (E.D.N.Y. Aug. 11, 2010) (denying motion to dismiss because multiple denials of plaintiff's rights during an arrest by at least five officers created "plausible inference that Nassau County has an informal policy or custom of at least tolerating police misconduct . . . [and the] involvement of numerous officers, the mocking Plaintiff allegedly received when invoking his right to counsel …suffices to suggest that Nassau County poorly trained and/or supervised its officers concerning the need not to violate suspects' civil rights.").  In any event, Plaintiff in fact has pled a pattern of constitutional violations. *See* section A, above.

It is also worth noting that Plaintiff has also pled broad involvement in misconduct with respect to herself.[14] *Michael* 2010 U.S. Dist. LEXIS 82764, at *13 (denying motion to dismiss Plaintiff's *Monell* claim, in part, because "[t]he conduct alleged in the Complaint took place over several hours. At least five officers allegedly participated in repeated denials [and 'mock[ing]'] of Plaintiff's rights, including his right to be free from arrest without probable cause, his right to counsel, and his right to be free from excessive force"); *see also Bangura v. The City of New York*, 7-CV-2966(DRH)(ETB), 2009 U.S. Dist. LEXIS 808 (E.D.N.Y. Jan. 7, 2009).

Plaintiff has pled her *Monell* claims with sufficient detail – more than required in the cases cited above – to withstand a motion to dismiss. Plaintiff has alleged, not only that the NYPD kettled and blocked in protesters before even playing a pre-recorded command, (FAC ¶¶ 11-12) but that they failed to provide her with any opportunity to comply with this command, (FAC ¶¶ 13-17) that Defendant Tocco confronted Plaintiff and demanded "Where do you think you're going?" before forcefully grabbing her arm. (FAC ¶17) And when Plaintiff explained that she was attempting to comply with the order and go to the sidewalk, Defendant Tocco responded by "mocking" her, (*compare Michael, supra*) yelling "Shut the fuck up!" while Defendant Inspector Gerard Dowling immediately grabbed Plaintiff's right arm. (FAC ¶18). Defendants Tocco and Dowling then kicked Plaintiff's feet out from under her causing Plaintiff to fall to the ground and sustain abrasions to her legs and cuffed her, neither one stopping the other (FAC ¶ 19-20.)

Defendants Dowling and Tocco *then* committed perjury, neither one stopping the other once more. Their constitutional violations continued at the precinct in formal paperwork which they knew would be used to justify Plaintiff's arrest and their presence at the protest in general. Rather than let Plaintiff go, Tocco and Dowling swore out an incredible story in the Criminal Complaint against

---

[14] Defendants incorrectly categorize each of Plaintiff's allegations with respect to herself – which amount to a string of multiple violations – as one incident.

Plaintiff, claiming that she jumped on top of Inspector Dowling's back while Defendants Tocco and Dowling were making a lawful arrest of another individual for blocking vehicle traffic and refusing to go onto the sidewalk. (FAC ¶ 29). And while they did this, Defendants *also* had their counsel argue that *no one* was arrested at the protest. DMOL n. 10.

Further, Plaintiff has cited to numerous prior incidents and cases in this district where the City's motion to dismiss similar claims have been denied. *See,* for example, FAC at ¶¶ 36-49 (citing to three cases which in turn contain citations to dozens of other cases which "demonstrate 'a pattern and practice of constitutional abuse' involving the use of mass arrest policies and practice similar to the ones that led to their constitutional deprivations." *Case v. City of New York*, 233 F. Supp. 3d 372, 404, 2017 U.S. Dist. LEXIS 19374, *65, 2017 (S.D.N.Y. Feb. 10, 2017) (citing *Mandal v. City of New York*, Nos. 02 Civ. 1234, 02 Civ. 1367, 2007 U.S. Dist. LEXIS 83642, 2007 WL 3376897, at *2 (S.D.N.Y. Nov. 13, 2007), *MacNamara v. City of New York* No. 04 Civ. 9216, 2007 U.S. Dist. LEXIS 79870, 2007 WL 3196295, at *1 (S.D.N.Y. Oct. 30, 2007), *Osterhoudt v. City of New York*, No. 10 Civ. 3173, 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927, at *1-2 (E.D.N.Y. Sept. 27, 2012); *Peat v. City of New York,* No. 12 Civ. 08230 (S.D.N.Y.); *Dinler v. City of New York,* 04-cv-7921 (S.D.N.Y.)). That is enough.

## C. Plaintiff Has Adequately Pled That the City's Municipal Policies Led to The Individual Defendants' Violations of Plaintiff's Rights.

Plaintiff has adequately pled that the City's policies caused the Individual Defendants' constitutional violations against Plaintiff. *Case v. City of New York*, 233 F. Supp. 3d 372, 408, 2017 U.S. Dist. LEXIS 19374, *75, 2017 WL 571530 (S.D.N.Y Feb. 10, 2017) ("Plaintiffs have set forth sufficient allegations to support their claim that the City failed to properly train its officers to ensure that similar constitutional violations would not be repeated, and this failure is the same training failure that led to Plaintiffs' constitutional deprivations."). Defendants do not train officers in providing meaningful opportunities to comply with dispersal orders (among other things), and that

failure caused Plaintiff's arrest. Defendants do not train officers on the importance of not including false narratives in complaints, and that failure led the individual Defendants to use a false narrative.

"The high degree of predictability may also support an inference of causation--that the municipality's indifference led directly to the very consequence that was so predictable." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409-410 (1997); *see also J.K.J. and M.J.J. v. Polk County and Darryl L. Christensen*, 960 F.3d 367, 381, 385 (7th Cir. May 15, 2020)("[F]inding causation is not a mechanical exercise like working a math problem and getting an answer, but instead requires jurors to view evidence in its totality, draw on their life experiences and common sense, and then reach reasonable conclusions about the effects of particular action *and* inaction"). "Predicting how a hypothetically well-trained officer would have acted under the circumstances may not be an easy task for the factfinder. . . . But judge and jury, doing their respective jobs, will be adequate to the task." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

Defendants would not even be entitled to dismissal of Plaintiff's case at the summary judgment stage on the basis of their causation arguments. Indeed, "[i]ssues of proximate cause are normally questions of fact for the jury to decide, unless the court concludes that a reasonable jury could reach only one conclusion." *Packer v. Skid Roe, Inc.*, 938 F.Supp. 193, 196 (S.D.N.Y. 1996).

### D. The Court should Deny Defendants' Request for Bifurcation of *Monell* Discovery.

The Court should deny Defendants' request for bifurcation because they have not made any proper or formal motion for bifurcation and do not request bifurcation in their notice of motion. Leaving aside the procedural infirmities of Defendants' improper request, the court should also deny it on the merits. Courts have previously deemed bifurcation inappropriate in cases where, as here, the Plaintiff presents a putatively triable claim as to Defendant City's *Monell* liability regarding its supervision, training, and discipline of its police officers and prosecutors. *See*, e.g., *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 480 (S.D.N.Y. 2009). It is well-settled that *Monell* liability may be found

even in the absence of individual liability, and therefore bifurcation would not necessarily limit proceedings in this matter, even in the unlikely event that none of the individual named defendants are found liable for the various violations of the Plaintiff's rights. *Askins v. Doe*, 727 F. 3d 248, 253–54 (2d Cir. 2013) ("It does not follow, however, that the plaintiff must obtain a *judgment* against the individual tortfeasors in order to establish the liability of the municipality. It suffices to plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality. In fact, the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality"); *see also Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999).

Additionally, Defendants incorrectly argue that separate proof is required to establish *Monell* and individual liability. This is wrong — and a red flag that Defendants intend to exploit any bifurcation to justify withholding discovery related to the Individual Defendants. Though a boilerplate argument Defendants raise in their routine requests for bifurcation, NYPD procedures and training materials in fact go to the merits of individual liability and are "relevant and helpful to determining the reasonableness of an officer's conduct." *Bermudez v. City of New York*, 2019 U.S. Dist. LEXIS 3442, *14, 2019 WL 136633 (E.D.N.Y., Jan. 8, 2019) (citing *Gogol v. City of New York*, No. 15 CV 5703, 2017 U.S. Dist. LEXIS 221874, 2018 WL 4616047, at *4 (S.D.N.Y. Sept. 26, 2018); *see also Baines v. City of New York*, 2016 U.S. Dist. LEXIS 58576, *6 (S.D.N.Y. May 3, 2016)(JMF)( "training materials are within the scope of permissible discovery" even in the absence of municipal liability claims); *See also Nnodimele v. Derienzo*, No. 13 CV 3461 (ARR)(RLM), 2016 WL 3561708, at *14 (E.D.N.Y. June 27, 2016) ("This court will also permit the parties to introduce relevant portions of the Patrol Guide and related testimony. Defendants seek to exclude such evidence because it contains guidelines that are distinct from standards imposed by the United States Constitution. Accordingly, defendants argue, the jury could be misled that violations of the Patrol Guide establish violations of the federal

constitution… This court agrees and joins a growing number of courts holding that '[i]n constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful.'") (*quoting Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013)).

If the Court grants Defendants' request for bifurcation, this would mean that it will *then* need to adjudicate endless disputes about Defendants' training and background, their understanding of proper procedures for making arrests at protests, the proper method for processing those arrests, and whether they were trained to tell the truth (since those go to both individual and *Monell* liability). And the City will inevitably attempt to improperly limit (*see* DMOL at 19-20, "Discovery on the underlying claims will be limited to the depositions of the parties and a focused document production") discovery to preclude training materials.

Since Defendants spend much of their motion expressing apparent concern for the Court's time, Plaintiff notes that she attempted to resolve every issue in Defendants' motion by compromising. Defendants rejected all of Plaintiff's efforts. Before Defendants filed their motion, Plaintiff in fact agreed to compromise on the issue of bifurcation. Plaintiff proposed that she would hold off on seeking any statistical information, but at this stage should still be entitled to seek information about training, policies, and procedures with regard to the individual Defendants for exactly the reasons outlined here – such information is relevant to individual liability and credibility. Defendants summarily rejected this proposal and refused to compromise. The Court should deny Defendants' request for bifurcation because it is premised on an exaggerated and insincere concern which would render inquiry into routine discovery regarding the individual Defendants impossible.

Finally, Defendants' proposed bifurcation may actually create or aggravate *Dunton* issues here. *Dunton v. County of Suffolk*, 729 F.2d 903, 908-09 (2d Cir. 1984). If the claims are bifurcated, the City's interests — in not facing discovery, in avoiding having to answer *Monell* questions — become much more starkly opposed to Defendants Tocco and Dowling's. Counsel might, on one hand, be providing

the best advice to Tocco and Dowling in suggesting that they raise their personal lack of training as a defense to the claims proper — as well as punitive damages.[15]  But identifying and raising that lack of training would make it more likely that the City and NYPD ultimately faced *Monell* discovery in the second phase. That conflict might even be enough that the Court would need to take action to fulfill its "duty to ensure that each Defendant in this action fully appreciates the potential inherent conflict in joint representation of multiple defendants and understands the potential threat a conflict may pose to each Defendant's interests." Order to Show Cause, *Jones v. City of Albany,* 18-cv-18 (N.D.N.Y.), ECF No. 33, *citing Dunton*, 729 F2d at 909. In other words, it is very much in the individual Defendants' interests to assert they were not adequately trained. But it is against the City and NYPD's interest for them to do so. And separating the case into separate phases aggravates that conflict — particularly when the City and NYPD are asserting (contrary to decades of litigation) that training on opportunity to disperse *does* exist.

### POINT III
### PLAINTIFF SHOULD BE PERMITTED
### TO AMEND THE COMPLAINT

Defendants have no basis for their request that the Court pre-emptively bar Plaintiff from amending the Complaint. Rule 15(a)(2) of the Federal Rules of Civil Procedure requires that the Court "freely give leave [to amend] when justice so requires." As the Second Circuit has instructed, this "permissive standard. . . is consistent with our strong preference for resolving disputes on the merits." *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* F.3d 160, 190 (2d Cir. 2015)( quoting *Williams v. Citigroup, Inc.,* 698 F.3d 208, 212-13 (2d Cir. 2011). The crux of Defendants' motion – especially with regard to Plaintiff's *Monell* claim - is that Plaintiff has not pleaded enough facts to support her causes of action. Yet, weirdly, Defendants claim that "further paragraphs cannot and will not remedy" any

---

[15] That is, if the individual Defendants were thoroughly trained on what opportunity to disperse they must provide, punitive damages for not giving that to Plaintiff would be more likely.

alleged pleading deficiencies. But, since other cases have survived to summary judgment alleging identical *Monell* theories, and Defendants' counsel's own office has confirmed protest policing policies have not been changed, Plaintiff should be permitted to amend to allege this information should the Court deem the operative Complaint insufficiently pled. Thus, Defendants' motion should be denied in its entirety.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an Order denying Defendants' partial motion to dismiss in its entirety, and for other such relief as the Court deems proper.


Dated:  New York, New York
           March 17, 2021


                                                         /s/
                                              _____
                                              J. Remy Green, Esq.
                                              Jessica Massimi, Esq.
                                              COHEN & GREEN P.L.L.C.
                                              1639 Centre Street, Suite 216
                                              Ridgewood, NY  11385
                                              929-888-9480
                                              remy@femmelaw.com
                                              jessica@femmelaw.com
                                              *Attorneys for Plaintiff*